**Debra Louise BERGMAN, Plaintiff and Appellant,**

v.

**Gary Cecil BERGMAN, Defendant and Appellee.**

Civ. No. 910415.

Supreme Court of North Dakota.

June 25, 1992.

**244**

Howe & Seaworth, Grand Forks, for plaintiff and appellant; argued by Mary E. Seaworth.   Appearance by Debra Louise Bergman.

Gary C. Bergman, pro se.  No appearance or briefs filed.

LEVINE, Justice.

Debra Bergman appeals from a Second Amended Judgment of the district court, modifying Gary Bergman's child support obligation for Debra and Gary's daughter, Nicole.   We reverse and remand.

Nicole is Debra and Gary's only daughter of their marriage which was dissolved in March 1977.   In an amended judgment, entered during June 1988, Gary was ordered to pay child support for Nicole of $225 per month.

Gary remarried.   He and his second wife, Charlene Bergman, had three children: Jessica, Eric and Brett.   Their marriage was dissolved in June 1989, and Gary was ordered to pay $525 per month as child support for those three children.

On June 20, 1991, Gary brought separate motions against Debra and Charlene to reduce his child support obligations, alleging that he had suffered a substantial reduction in income.   The motions were consolidated for consideration by the trial court. After a hearing, the trial court determined that Gary had suffered a 40 percent "long term" reduction in income "due to no fault of Gary['s]," and that the reduction in income constituted a material change of circumstances entitling Gary to a reduced child support obligation.   *Sweeney v. Hoff,* 478 N.W.2d 9 (N.D.1991) (trial court retains jurisdiction to modify child support when the circumstances of the parties have materially changed).

The court, following the North Dakota Department of Human Services Child Support Guidelines, determined that a person with Gary's income of $900 per month has a total support obligation of $324 per month for four children.   The court divided $324 by four and awarded each child a one-fourth share, or $81 per month.   The court entered a Second Amended Judgment, reducing Debra's support payments from Gary for Nicole, from $225 per month to $81 per month.   In a separate judgment, the court reduced Charlene's support payments from Gary for Jessica, Eric and Brett, from $525 per month to $243 per month.   Debra then filed this appeal.

Debra asserts that the trial court erred in applying the guidelines.   She does not object to the trial court's finding that there was a material change of circumstances

warranting a reduction in child support for Gary, nor does she object to the trial court's finding that Gary's current monthly net income is approximately $900. Debra's objection focuses upon the trial court's method of applying the guidelines, leaving Nicole with only $81 per month child support from Gary.

Debra contends that when there are two separate families involved, each having children whom the obligor owes a duty to support, the first family with the eldest child or children should receive first consideration under the guidelines. Debra argues that the trial court should have awarded Nicole $207 per month which is the amount of support the guidelines show for one child when the obligor's net monthly income is $900. Debra asserts that the guidelines recognize the first family's favored position. She relies on Section 75–02–04.1–01(4)(e), of the Child Support Guidelines,[1] which defines net income as income left after payments made for child support for children other than those whose support is at issue in the proceeding before the court. She says that the trial court should have followed the implied directive under this guideline section, by deducting Gary's $207 per month support obligation for Nicole from his $900 net monthly income to get a reduced net monthly income (rounded to the nearest $100 amount) of $700. Using that income figure, the guidelines show that Gary's

support obligation for three children would be $189 per month. The result of Debra's suggested application of the guidelines is that Gary would pay $207 per month for Nicole and a total of $189 per month for his other three children. Debra asserts that this is a fair application of the guidelines, because Nicole is part of Gary's "first family" and she should receive priority over the three children in Gary's "second family."

■ Section 14–09–09.7(3), N.D.C.C.,[2] establishes a rebuttable presumption that the correct amount of child support is obtained by applying the child support guidelines. It also provides that the presumption may be rebutted by evidence establishing that factors not considered by the guidelines would result in undue hardship to the obligor or supported child. *See Clutter v. McIntosh*, 484 N.W.2d 846 (N.D.1992); *Montgomery v. Montgomery*, 481 N.W.2d 234 (N.D.1992). Unlike other states' guidelines, our guidelines do not prohibit a reduction of child support because of subsequent or second family children. [*Compare, e.g.*, Montana Child Support Advisory Council, *Guide for Determination of Child Support Obligations*, Part 13 (1985); U.S. Department of Health & Human Services, *The Treatment of Multiple Family Cases Under State Child Support Guidelines*, pp. 23–28 (July 1991)].[3]

---

1. Section 75–02–04.1–01(4)(e) of the Child Support Guidelines provides:
   "4. 'Net income' means total gross monthly income less:
   "e. Payments actually made pursuant to a child support order, issued by a court or other governmental agency with authority to issue such orders, with respect to a child for whom support is not being sought in the proceeding before the court."

2. Section 14–09–09.7(3), N.D.C.C., provides:
   "3. There is a rebuttable presumption that the amount of child support which would result from the application of the child support guidelines is the correct amount of child support. The presumption may be rebutted if a preponderance of the evidence in a contested matter establishes that factors not considered by the guidelines will result in an undue hardship to the obligor or a child for whom support is sought. A written finding or a specific finding on the record must be made

if the court determines that the presumption has been rebutted."

3. The Montana guidelines explain the rationale for refusing to adjust an existing child support order for hardship based on subsequent children:
   "A parent's pleas that his or her new responsibilities are a change in circumstances justifying a reduction in a prior child support award will not serve as a basis for a reduction of support. Creation of the new family is a voluntary act and that parent should decide whether or not he or she can meet existing support responsibilities and provide for new ones before taking that step."
   The cited publication of the U.S. Department of Health and Human Services notes that relatively few states provide formulas for reducing child support to first families because of a second family or subsequent children, but those that allow any adjustment "generally leave both incidence and amount to judicial discretion."

In resolving this case, we are guided by our decision in *Montgomery, supra.* There, the trial court was asked to determine the child support obligation of a father whose monthly net income exceeded the $10,000 per month income level covered by the child support guidelines. We concluded that the guidelines did not provide a presumptively correct amount of child support, because they did not cover the obligor's income level. We held that under those circumstances, the trial court must determine an appropriate amount of child support according to the "needs of the children and the ability of the parent to pay ... without the benefit of the guidelines." *Montgomery, supra,* 481 N.W.2d at 235. This case involves an analogous situation which is not covered by the guidelines.

The guidelines contain no table or schedule to accommodate a multifamily situation. But, the guidelines do recognize that each additional child in a household does not proportionately increase the total cost of care for the children in that household. For example, the guidelines provide that an obligor with a net monthly income of $900 must pay child support of $207 for one child, but if there are two children, the support obligation is only $252, considerably less than twice the amount of support required for only one child. However, the guidelines do not include a schedule or other suitable means for adequately determining an obligor's support obligation when the children live in two or more households, instead of one. *Compare* State Court Administrator's Office, *Michigan Child Support Guidelines Manual,* (January 1990).[4]

■ The problem with the trial court's attempted application of the guidelines is that it does not factor in the greater cost of providing for the first child in a household. However, Debra's suggested application of the guidelines is also flawed. Her proposed application of the schedule would result in Nicole receiving more total dollars of support from Gary ($207 per month)

than his other three children, together ($189 per month). Our pre-guideline case-law recognized the preeminence of the first family by rejecting any attempt by the noncustodial parent to reduce a support obligation by virtue of the "voluntary" expense incurred by assuming a second family. *E.g., Foster v. Nelson,* 206 N.W.2d 649 (N.D.1973). However, it is clear that the guidelines do not take into account either multifamilies or the allocation of an obligor's income among children of the obligor's multiple former partners. The inequity of treating some children more favorably, based upon the order of their birth or upon the order of their appearance before the court, is obvious, but it arises from the reality that, ordinarily, child support is set in chronological order. The usual scenario is that the first family's support is adjudicated, followed by the second family, and so on. Here, we have a joinder of the two families and an opportunity to achieve a more equitable result. Consequently, we conclude that the court cannot rely on the guidelines in determining the support obligation, except as a preliminary "starting point." *See Montgomery, supra,* 481 N.W.2d at 235. We conclude, as a matter of law, that the child support guidelines do not provide a presumptively correct amount of child support in this case, because the obligor's children reside in more than one household.

■ When the guidelines do not establish the amount of child support, the trial court must decide the amount by striking a balance between the needs of the children and the ability of the noncustodial parent to pay. *Heggen v. Heggen,* 452 N.W.2d 96, 102 (N.D.1990). But the guidelines should still inform the court's inquiry. At Gary's income level of $900 per month, the guidelines show that the support obligation for a single household with four children is $324 per month. Presumably, a total support obligation exceeding $324 would be necessary here, because there are four children

---

4. The Michigan guidelines impute a support amount for subsequent children of a second family which is limited to one-half the usual support amount for the same number of children. That imputed support amount for subsequent children of a second family is deducted before computing the support award for the children before the court.

who reside in two separate households and we know that two households cost more than one. Upon remand, the trial court should also factor into its equation the principle that proportionately less funds are required for each succeeding child in a household.

The concurring opinion's viewpoint that the guidelines provide for allocating support payments among multi-families who are simultaneously before the court requires a response. Section 75–02–04.1–01(4)(e), N.D.A.C., expressly limits its deduction from net income to support payments of "a child for whom support is not being sought in the proceeding before the court." When all of the children involved are before the court, the provision, by its express terms, is not applicable. If the trial court would have attempted to use that provision in allocating support between these two families, in the manner suggested by the concurring opinion, the provision would have provided the court with more of an enigma than with guidance. The court would have been faced with the perplexing question of which of the two families should it first award support, based upon Gary's $900 monthly income, and which family should it then award support based upon the reduced income amount. If the court had first awarded support to Nicole, she would have been entitled to $207 per month, based upon Gary's $900 net monthly income. That is considerably more than the concurring opinion's computed $133 support amount for Nicole. Gary's other three children would then receive a total support amount of only $189 per month, based upon Gary's reduced monthly income, after deducting Nicole's support award.

The only reasonable conclusion can be that the child support guidelines do not provide adequate guidance when multiple families appear simultaneously before the trial court. It is not instructive for us to provide a method of computation using circumstances and figures different from those facing the trial court when it had to make its decision. It provides no guidance to trial courts facing similar circumstances to say that the $243 support award to Gary's children with Charlene is the benchmark figure to use in deciding Nicole's support, because it was not appealed. When the trial court was trying to fairly allocate support to these families, the $243 support award was nonexistent and no time period for appealing had yet expired for any of the parties. Under these circumstances, analogous to those in *Montgomery, supra*, we can only advise the trial court to use the guidelines as a starting point, and that it must make its decision by considering the best interests of all the children and by balancing the needs of the children with the noncustodial parent's ability to pay.

In reaching its decision, the trial court stated that the Equal Protection Clause of the United States Constitution required the court to divide the total dollar amount of support for the four children into equal shares. No party has asserted an equal protection violation in this case, and the court must not, on its own motion, raise a constitutional issue that has not been raised by a party to the litigation. *Boedecker v. St. Alexius Hospital*, 298 N.W.2d 372 (N.D.1980). While a court should avoid a constitutionally precarious interpretation of a statute or rule, no such infirmity is apparent here, where the court is asked to award an equitable, but not necessarily equal, dollar amount of support to the children residing in separate households.

In accordance with this opinion, the judgment of the district court is reversed, and the case is remanded for a redetermination of Gary's child support obligation for Nicole.

ERICKSTAD, C.J., and JOHNSON, J., concur.

MESCHKE, Justice, concurring.

Because the trial court did not consider the greater cost of supporting the first child in a household, as the guidelines dictate, I concur that the reduction of Gary's support for Nicole, from $225 per month to $81 per month, must be reversed. However, I submit that a remand is unnecessary.

When there is not enough money for child support, there is surely not enough for more litigation. The reality is that $900 is simply not enough monthly net income for Gary to adequately contribute to the support of three households, Debra's, Charlene's, and his own. We should not worsen the shortage with more litigation expense. Instead of a remand, I would apply the law of the guidelines here.

What more could the trial court learn on remand about the needs of the children or the resources of the parents? Gary has debts over $35,000, no available assets, and a net income of only $896 monthly, with living expenses of $491 monthly. Debra has a net earned income of $950 monthly, with living expenses of $1,585 monthly. Charlene has a net earned income of $1,000 monthly, with living expenses of $1,570 monthly. Even a trial judge with the wisdom of Solomon would be unable to designate more than $400 monthly for Gary to allocate to the two custodial households.

I do not agree, as Justice Levine's opinion asserts, that "the guidelines do not take into account either multifamilies or the allocation [of support] ... among children of the obligor's multiple former partners." The guidelines do consider those factors. NDAC 75–02–04.1–01(4)(e) directs that "[p]ayments actually made pursuant to a child support order, ... with respect to [children] for whom support is not being sought in the proceeding before the court" must be deducted from Gary's net monthly income of $900 before computing support for each family.

So, after deducting the $243 ordered for payment to Charlene monthly for support of three children and not appealed, Gary's income for calculating support payable to Debra is $657. Rounded to $700, as NDAC 75–02–04.1–02(5) directs, the scheduled monthly support amount for Debra under NDAC 75–02–04.1–10 would be $133 for one child. We should order that $133 as presumptively correct under the guidelines.

Reciprocally, if the support payable to Charlene is reconsidered, the guidelines would sustain the $243 ordered in Char-

lene's case that has not been appealed. After deducting $133 monthly for the payment to Debra for support of one child, Gary's income for calculating support to Charlene would be $767. Rounded to $800, as NDAC 75–02–04.1–02(5) directs, the scheduled monthly support amount for Charlene under NDAC 75–02–04.1–10 would be $232 for three children, a minor difference from the $243 ordered.

The guidelines direct that, when multiple support orders against a non-custodial parent exist, payments to each household must be factored. When several claims simultaneously come before the court, as here, the amounts must be synchronized. The presumptive law of the guidelines should be applied in cases consolidated for hearing. It is neither as intimidating as Justice Levine imagines, nor as inappropriate as Justice VandeWalle intimates. We can review Debra's case without significantly affecting Charlene's.

Judicial economy, too, suggests that the impoverished circumstances of these litigants not be worsened by an ineffective remand. I would direct that Gary's support payment for Nicole be increased to $133. He can afford no more at this time, and the guidelines mandate it.

VANDE WALLE, Justice, concurring in result.

Ordinarily on appeal we rely on the adversarial system to elucidate the issues before the court and present the appropriate law to resolve those issues. In this instance, that system did not function. Although I concur in most of the majority opinion, I recognize the practicality of Justice Meschke's special concurrence. Nevertheless, that concurrence highlights my concern over the procedure on appeal in this case.

Although Gary brought separate motions to reduce his child support obligations for the children he had with Debra and the children he had with Charlene, and although the motions were consolidated for consideration by the trial court, when Debra appealed she did not serve a notice of appeal on Charlene or her attorney nor

were they parties to this appeal. Charlene might not be a party to the appeal simply because the motions for reduction in child support were consolidated for hearing. But, more significantly given Gary's limited income, it appears that if support for Debra's child is to be increased it will be at the expense of the payments to Charlene's children. That is exactly the position Debra took on appeal, while conceding that she did not include Charlene as a party to the appeal.

If possible, we should not "make new law" without the adversaries describing for us the benefits and pitfalls of the various positions which the court might adopt. Here Gary chose not to participate in the appeal, perhaps because he thought his liability for child support was fixed and only the distribution among the children was of concern. If so, both the majority opinion and the special concurrence cast doubt on that supposition. It may be that his failure to participate was due to the lack of financial means to do so as described by Justice Meschke in his special concurrence. In any event, it was his decision to participate or not and his decision to not participate in the appeal is at his own risk.

The same is not true of Charlene. Debra did not give her the opportunity to participate as she was not served with the notice of appeal and was not considered by Debra or this court as a party to the appeal, despite the fact that Debra's proposed solution would have reduced payments for Charlene's children. Where motions to reduce support payments are made and considered separately it may be understandable that a third party would not be made a party to the appeal. Here the motions were consolidated and the position of the parties was known and I believe Charlene should have been a party to this appeal and permitted to express her position on the issues.

I concur in the result reached by the majority opinion because it remands the matter to the trial court where, presumably, Charlene will again have the opportunity to participate in a redetermination of Gary's child support obligation and to ap-

peal the judgment containing that determination or be a party to any appeal from that judgment by any other party.