Debra Susan MAHONEY, Plaintiff and Appellant,

v.

Timothy James MAHONEY, Defendant and Appellee.

Civ. No. 950005.

Supreme Court of North Dakota.

Sept. 22, 1995.

Garaas Law Firm, Fargo, for plaintiff and appellant;  argued by Jonathan T. Garaas, Fargo.

Stefanson, Plambeck & Foss, Moorhead, for defendant and appellee; argued by Todd W. Foss, Moorhead.

MESCHKE, Justice.

Debra Susan Mahoney appealed from an order decreasing child and spousal support payable by her ex-husband, Timothy James Mahoney. We reverse and remand for reconsideration.

Debra and Tim were married on January 1, 1977, and had three children. Ryan was born on May 28, 1980; Kaileen on January 29, 1982; and Colin on January 10, 1986. Debra filed for divorce in August 1991 and, after a seven-day trial in July 1992, they were divorced. Tim was then a surgeon at Dakota Clinic, Ltd. in Fargo earning $242,100 annually.

After the trial court announced its intended findings, Tim filed an affidavit that he would leave Dakota Clinic to open a practice with two other surgeons. He said his work at Dakota Clinic would end October 31, 1992 so that he would lose some year-end profit-sharing. Due to this "newly discovered evidence or a change of circumstance," Tim objected to Debra's proposed findings and decree. Soon after, though, Tim and Debra agreed that, if the proposed decree was entered, "Each party waives his or her right to appeal from the Judgment as entered." On September 9, 1992, the court entered the decree that ordered Tim to pay Debra $2,000 monthly spousal support for four years, and $4,080 monthly child support.

On May 13, 1993, Tim moved to reduce his support payments, claiming that his reduced income after leaving Dakota Clinic was "a significant change in his financial circumstances warranting a modification of support." The trial court denied Tim's motion, and Tim appealed. The Court of Appeals reversed and remanded for reconsideration, explaining that it was "unable to conclude that the trial court's erroneous view that Timothy was required to obtain prior court approval before changing employment did not color its judgment in denying the motion for modification." *Mahoney v. Mahoney,* 516 N.W.2d 656, 662 (N.D.App.1994). On remand, in December 1994, after a three-day

trial, the court reduced Tim's monthly support payments to $1,000 for Debra and to $1,500 for the children, but extended her spousal support for an additional year. The court made the reductions effective from September 1, 1993. Debra appealed.

After her appeal, Debra moved the trial court for a stay of the "retroactive effect on child support" because Tim refused to make any more payments until he "has recovered the amount that he has paid in excess of $2,500.00 per month since September, 1993," and because Debra needed "current support monies [since] amounts that she ... received previously from [Tim] in excess of $2,500.00 after September 1, 1993, have been spent and are no longer available for the children" or her. The court stayed the effect of the accrued credits pending appeal, explaining:

> [I]t was never pointed out to me, or did I realize when I modified the Judgment, that it would mean arrearages going the other way. I always intended that the $2500.00, at least initially, be continued. I am not going to leave these children with no income.

The court ordered Tim to continue paying the $1,000 spousal support and the $1,500 child support monthly, "during the pendency of the Appeal ... without regard to the existence of any claimed ... credit in favor of [Tim] supposedly created by the Amended Judgment," and directed that "these matters be reexamined by this Court after resolution of the pending appeal should the decision of the Supreme Court justify such reexamination so as to do justice to the parties."

Debra argues on appeal that no material change in circumstances authorized a reduction in support, the findings on the extent of the decrease in Tim's income are clearly erroneous, and the reduced support should not be retroactive. Because we agree the findings on the extent of the decrease in Tim's income are clearly erroneous, we reverse and remand for reconsideration.

■ A trial court's modifications of child support and spousal support are findings of fact that will not be reversed unless clearly erroneous. *Gabriel v. Gabriel,* 519 N.W.2d 293, 294 (N.D.1994); *Gronland v. Gronland,*

527 N.W.2d 250, 253 (N.D.1995). A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence supports it or if, on the entire record, we are left with a definite and firm conviction that a mistake has been made. *Krank v. Krank,* 529 N.W.2d 844, 847 (N.D.1995). We conclude that the trial court properly found a material change of circumstances, but that its findings about Tim's decreased income were induced by an erroneous application of the guidelines and statutes on child support, and are therefore clearly erroneous. After reconsideration on remand, the trial court should establish a new equitable effective date for any changes in Tim's support payments.

### 1. *Change of Circumstances*

Debra argues: "There was no material change in circumstances because Tim's departure from Dakota Clinic was contemplated by the parties at the time of the stipulation which resulted in the non-appealable judgment of September 9, 1992"; the trial judge "is 'clearly erroneous' when he indicates that the resignation had 'no effect upon the Court's final Judgment'" because Tim's "resignation was known to all parties when the child support and spousal support obligations were imposed upon Tim—with his consent"; and Tim's "actions were unreasonable" because he acted in bad faith and "did not consider his actual circumstances of employment when he voluntarily resigned from Dakota Clinic." Therefore, Debra argues, "Tim failed to establish a prima facie case of material change in circumstances justifying any reduction in Tim's support obligations." We disagree.

Currently, only if a motion to modify child support is made within one year of a prior order is a material change of circumstances needed to conform the order to the guidelines. NDCC 14–09–08.4(3); *Schmidt v. Reamann,* 523 N.W.2d 70, 72 (N.D.1994); *Eklund v. Eklund,* 538 N.W.2d 182 (N.D. 1995). Tim first moved to modify support on May 13, 1993, only eight months after the September 9, 1992 decree. For this reason, apparently, and because spousal support can only be modified for a material change of circumstances, Tim does not contest the need for changed circumstances. Furthermore, the Court of Appeals clarified that the trial court could modify these-support orders for a material change in circumstances. *Mahoney,* 516 N.W.2d at 660. "Because a change in employment does not necessarily result in a change in financial circumstances, the proper time for a court to determine whether a change has occurred, whether the change is permanent or temporary, and whether it was made in good faith, is after the fact." *Id.* at 661.

The guidelines do not allow "an obligor with an established earnings history to drastically reduce his income, and thereby his ability to pay child support, upon a whim," or "voluntarily, without good reason." *Olson v. Olson,* 520 N.W.2d 572, 574 (N.D.1994). Still, we recognized in *Olson* that "there may be instances when medical, psychological, or other valid reasons will support [such] a change." *Id.* "We can also envision situations where the parent accepts new employment at a lower current salary or seeks further education, if the potential for advancement and long-term security are improved." *Id.* (citing *Schatke v. Schatke,* 520 N.W.2d 833 (N.D.1994)). In *Olson,* the parent voluntarily quit a "well-paying, permanent teaching position to take a substantially lower-paying job," but he gave no valid reasons for the change. 520 N.W.2d at 574. We adopted a "rule of reason" and affirmed the trial court's imputation of income compatible with his prior earnings to calculate child support under the guidelines. *Id.*

Here, Tim claimed "workload, visitation, psychological and economic" reasons for the change. The trial court found that Tim "voluntarily submitted his resignation to Dakota Clinic," but it accepted as valid his reasons for resigning, finding that "[Tim], perhaps unrealistically, felt his income would remain the same or increase." From evidence, the court also found that Tim's income "dropped substantially since the resignation," that the drop "was not known, anticipated, or considered by [Tim] at the time of the resignation or subsequent divorce," and that "[Tim] has experienced a significant change in circumstances justifying the modification of child

support and reduction of spousal support/alimony."

Debra claims Tim acted unreasonably and in bad faith in resigning from Dakota Clinic, and that the evidence compels a finding of his bad faith. We disagree.

■ The trial court observes the demeanor and credibility of the witnesses, it is in a better position to choose between two permissible views of the evidence, and we do not retry the case to substitute findings we might have made for those the trial court makes when reasonable evidence in the record supports the findings made. *Schmidkunz v. Schmidkunz,* 529 N.W.2d 857, 859 (N.D.1995). The trial court found that Tim, "perhaps unrealistically," underestimated his future income when he left Dakota Clinic, but concluded that "[Tim] has made a substantial showing of good faith or cause for his voluntary resignation and subsequent decline in income." An unrealistic expectation, alone, does not conclusively prove misconduct or bad faith. We conclude that the trial court findings, that there was no misconduct or bad faith in Tim's changing employment, are not clearly erroneous.

### 2. *Decreased Income*

The trial court's findings about Tim's decreased income in 1993 and 1994 for application of the guidelines table are clearly erroneous. The court misapplied the guidelines and statutes on child support.

The trial court found Tim's income "has dropped substantially since the resignation," and his "income for 1993 from all sources was $114,133 and his estimated income for the first seven months of 1994 is $40,000." The court also found his "business costs, although allowed for taxation purposes, are in some instances excessive," his "business expenses [for] contributions, entertainment, gifts, disability insurance, membership, travel expenses and workshops and seminar expenses are excessive under all the facts and circumstances of this case," and his "net monthly income for child support purposes for the last 19 months has averaged approximately $3,334.00 per month." From these findings, the court concluded Tim should pay child

support of $1,500 per month, because, "although the child support obligation is in excess of the amount of child support payable as determined by the child support schedule, the additional amount is warranted...."

■ The guidelines direct the *"annual* total of all income considered in determining a child support obligation must be determined and then divided by twelve in order to determine the obligor's monthly net income." NDAC 75–02–04.1–02(6) (emphasis added). If the court averaged the income that it found, $114,133 for 1993 and $40,000 for seven months in 1994, Tim's average income would have been over $8,100 monthly, and the guidelines would have required $2,750 monthly child support, rather than the $1,500 ordered.

On the other hand, the $1,500 monthly child support ordered implies a monthly income of $4,400, but that figure is nowhere in the findings. The trial court found a $3,334 net monthly income, but it did not explain how it did so. While the court said that the $3,334 monthly net income was also increased for "excessive" business expenses, neither the amount of disallowed business expenses nor the resulting adjusted income are given. *See* NDCC 14–09–09.7(3); NDAC 75–02–04.1–02(6) and (7). The findings are inconsistent and incomplete.

The trial court used a monthly income that "averaged approximately $3,334.00 per month," but that figure was inconsistent with either the 1993 annual income of $114,133, the partial 1994 income of $40,000, or both combined. The necessary computations are missing.

Actually, $3,334 monthly was an evidentiary figure calculated by John West, a CPA testifying for Tim. West netted the $3,334 monthly by "[c]ombining the income for 1993 and the first seven months of 1994," and calculating adjustments "[u]sing the 1993 tax returns and financial information obtained from Professional Resources, Ltd.," the new clinic that Tim joined. The court did not make independent findings about how that adjusted monthly income was arrived at. NDCC 14–09–09.7 directs application of the child support guidelines to "net income" and "other available resources" to create a rebut-

table presumption of the "correct amount of child support." Then, a "written finding or a specific finding on the record must be made" to vary from the presumed amount. NDCC 14–09–09.7(3). The finding must:

a. State the child support amount determined through application of the guidelines;

b. Identify the criteria that rebut the presumption of correctness of that amount; and

c. State the child support amount determined after application of the criteria that rebut the presumption.

*Id.* Here, the court did not coherently assemble facts and figures from the evidence to determine Tim's net income but, instead, took at face value a figure from John West, who said he "calculated [Tim's] income for child support purposes under the guidelines" by "[c]ombining the income for 1993 and the first seven months of 1994." Because the expert's calculations and adjustments were not consistent with the guidelines, the trial court should not have adopted the expert's conclusion.

The obligor's net monthly income must be determined under the guidelines. NDAC 75–02–04.1–02(3) and (6). "Income must be documented through the use of tax returns, current wage statements, and other information sufficient[ ] to fully apprise the court of all gross income." NDAC 75–02–04.1–02(7) (part). "Where gross income is subject to fluctuation, particularly in instances involving self-employment, information reflecting and covering a period of time sufficient to reveal the likely extent of fluctuations must be pro-

vided." *Id.*[1] For a self-employed obligor like Tim, expenses for the cost of producing income are deducted from gross income to compute adjusted gross income. NDAC 75–02–04.1–05(1). Under NDAC 75–02–04.1–05(2), business expenses like depreciation (allowed for taxation purposes, but not actually expended) are added back, and some expenses actually incurred and paid, but not deducted for taxation purposes, like principal paid on a business loan, may be deducted to compute net income.

West first computed Tim's "self-employment" income (apart from his W–2 salary) from his personal corporation by adding $5,081 income, $2,338 amortization, and $22,749 depreciation, all as reported in the tax return, for $30,168 income. West then deducted three items totaling $69,326 to arrive at a net $39,158 "self-employment" loss. But at least two of the three large deductions made by West to compute Tim's 1993 "self-employment" income as a $39,158 loss are inconsistent with the guidelines. The three large deductions were $17,620 for "Equipment Acquisitions,"[2] $10,000 for "Organization Costs," and $41,706 for "Principal Loan Repayment." As Debra points out and Tim does not counter or explain, Tim's management agreement, dated October 2, 1992, at paragraph 6A indicates the $10,000 "original setup fee" for organization costs was paid in 1992, not 1993. Also, since Tim personally invested $45,000 to start his new personal corporation in 1992, the "Principal Loan Repayment" to himself, rather than to an actual creditor, is an inappropriate deduction from his earned income,[3] even if it did not dupli-

---

1. When amended effective January 1, 1995, a subsection (8) was added to NDAC 75–02–04.1–02:

   Calculations made under this chapter are ordinarily based upon recent past circumstances because past circumstances are typically a reliable indicator of future circumstances, particularly circumstances concerning income. If circumstances that materially affect the child support obligation are very likely to change in the near future, consideration may be given to the likely future circumstances.

2. Arguably, this item, cash expended for purchase of "depreciable assets," may be allowable as "[b]usiness costs actually incurred and paid," because depreciation on equipment, which is not

an actual expenditure, must be put back into adjusted gross income to determine net income from self-employment. NDAC 75–02–04.1–05(2). Thus, the $17,620 item for "equipment acquisitions" that West deducted might qualify for deduction as a business expense if it was expended in 1993, not 1992. Still, that would leave over $12,500 in self-employment income to add to W–2 and partnership income, rather than a large loss to deduct from those income sources.

3. As amended effective January 1, 1995, NDAC 75–02–04.1–05(2) allows deduction from adjusted gross income from self-employment of "principal payments on business loans (to the extent there is a net reduction in total principal obli-

cate expenditures to purchase equipment and begin his new practice. By uncritically accepting CPA West's computation of Tim's 1993 "self-employment" loss of $39,158 in a manner inconsistent with the guidelines, without assessing how those drastic adjustments fit with the guidelines, the trial court misapplied the law.

CPA West then used this $39,158 "self-employment" loss in 1993, to combine with Tim's W–2 salary from his personal corporation of $96,866, his W–2 income from Dakota Clinic of $9,774, and Tim's partnership income of $1,428, to reach a "Total Income" of $73,177 for 1993. West then subtracted Tim's allowable taxes and childrens' medical expenses to arrive at $43,554 net income for 1993, and thus reached a monthly net income of $3,630 for 1993.

Miscalculating 1993 income was not the only misapplication of the guidelines. The trial court found Tim's "estimated income for the first seven months of 1994 is $40,000.00," but CPA West used only $19,787 for those seven months, after deducting another "principal loan repayment" of $22,303. West combined the $19,787 for seven months with his 1993 adjusted income to reach the $3,334 monthly net that the trial court then used for monthly net income.

The averaging of a partial tax year with the prior, full year in the new clinic was error unless appropriate adjustments were made to the partial year to reflect only appropriate deductions, and to reflect the proportionate annual effect of deductions occurring unevenly throughout the year. The guidelines direct:

> Income must be documented through the use of tax returns, current wage statements, and other information sufficiently to fully apprise the court of all gross income. Where gross income is subject to fluctuation, particularly in instances involving self-employment, *information reflecting and covering a period of time sufficient to reveal the likely extent of fluctuations must be provided.*

NDAC 75–02–04.1–02(7) (part; emphasis supplied). Our conclusion here is reinforced

gations incurred in purchasing depreciable as-

by the trial court's specific finding that "it is likely that [Tim's] income will steadily increase within the foreseeable future." Therefore, we believe that the trial court should have used only Tim's 1993 income from his tax returns and that it was clearly erroneous for the trial court to use calculations inconsistent with the guidelines to determine Tim's net income.

We believe, applying guideline methodology, Tim's adjusted gross income from his 1993 tax return (before the alimony deduction) is $114,133. Then, after adding his "self-employment" income of $30,168, derived from his "self-employment" tax return, and deducting allowable income taxes of $16,486 for federal income tax, $2,308 for state income tax, and $5,700 for F.I.C.A. taxes, (see NDAC 75–02–04.1–01(7)(a), (b), and (c)), Tim's 1993 net income would be closer to $120,000, or nearly $10,000 monthly. If the "equipment acquisitions" adjustment of $17,620 is made, Tim's 1993 net income would be over $102,000, or $8,500 monthly. For a monthly net income of $8,500, the guideline table schedules monthly child support of $2,894. Also, $8,500 monthly income would probably justify a comparably larger spousal support payment than would the $3,334 net monthly income the trial court used. The trial court should more carefully analyze the evidence about income and adjustments for 1993 under the guidelines to arrive at the proper amount of support.

Because the trial court's findings about Tim's reduced income from self-employment are inconsistent with the guidelines, we remand for proper findings and a corrected determination of Tim's net income for setting child and spousal support.

### 3. "Retroactive" Reductions

Debra argues that the decreased support should not have been made retroactive, and that the trial court erred in concluding that "the modification in child support and spousal support shall be effective as of September 1, 1993." She claims, because Tim had accumulated arrearages of unpaid support of $16,000, which she had already

sets)."

entered as a money judgment for execution, the trial court "unilaterally wiped out the $16,000 money judgment in favor of Debra because [the court] records would reflect excess monies having been paid during the pendency of the proceedings." Debra is apprehensive that the remaining credit to Tim from recomputing past support will considerably delay his actual payment of the reduced support, perhaps almost a year.

Federal law mandated that each state enact:

Procedures which require that any payment or installment of support under any child support order, whether ordered through the State judicial system or through the expedited processes required by paragraph (2), is (on and after the date it is due)—

(A) a judgment by operation of law, with the full force, effect, and attributes of a judgment of the State, including the ability to be enforced,

(B) entitled as a judgment to full faith and credit in such State and in any other State, and

(C) not subject to retroactive modification by such State or by any other State;

except that such procedures may permit modification with respect to any period during which there is pending a petition for modification, but only from the date that notice of such petition has been given, either directly or through the appropriate agent, to the obligee or (where the obligee is the petitioner) to the obligor.

42 U.S.C. § 666(a)(9) (1988). This mandate expressly permits modifications back to "the date that notice ... has been given" for "any period during which there is pending a petition for modification."

North Dakota complied by enacting a statute that directs:

Any order directing any payment or installment of money for the support of a child is, on and after the date it is due and unpaid:

a. A judgment by operation of law, with the full force, effect, and attributes of a judgment of the district court, including the ability to be entered in the judgment book pursuant to rule 58 of the North Dakota Rules of Civil Procedure and otherwise enforced as a judgment;

b. Entitled as a judgment to full faith and credit in any jurisdiction which otherwise affords full faith and credit to judgments of the district court; and

c. Not subject to retroactive modification.

NDCC 14–08.1–05(1). Under this enactment and NDRCivP 58, each accrued child support payment can be docketed as a judgment for enforcement and execution against the obligor under NDRCivP 69. *Fuson v. Schaible*, 494 N.W.2d 593, 595 (N.D.1992). Past due and unpaid support cannot be retroactively modified. *Throndset v. L.L.S.*, 485 N.W.2d 775, 780 (N.D.1992). Still, while not expressed in NDCC 14–08.1–05(1), but consistent with 42 U.S.C. § 666(a)(9), our cases permit a "modification [for] any period during which there is pending a petition for modification ... from the date that notice of such petition has been given...." A "pending modification" is not a "retroactive" modification.

We have applied this doctrine of a "pending modification" in our recent guideline cases. A trial court "must decide if the appropriate effective date [of a modification order] should be the date the motion was filed, the date the court issued its order ..., or some later date." *Gabriel*, 519 N.W.2d at 295; *see also Guthmiller v. Guthmiller*, 448 N.W.2d 643, 649 (N.D.1989) (allowing modification back to time motion made and noticed). We have explained:

Once a petition to modify a support order has been filed, the respondent is on notice that circumstances relevant to the determination of child support have changed and that the terms of the support obligation will change upon a judicial determination that the changed circumstances are material.

*Olson v. Garbe*, 483 N.W.2d 775, 776 (N.D. 1992). In *Olson* at 777, we reversed and remanded an order modifying child support when the court mistakenly believed it could not make a modification effective for any part of the time it had been pending. We directed the trial court to consider an appro-

priate effective date for the modification, not earlier than the date the motion to modify had been filed and served.

■ Here, Tim first moved to reduce his support payments on May 13, 1993. After a hearing on June 23, 1993, denial of Tim's motion on August 12, 1993, and notice of the denial to Tim on September 13, 1993, Tim appealed on October 22, 1993. The Court of Appeals reversed for reconsideration of the denial of Tim's motion for modification. *Mahoney,* 516 N.W.2d at 662. In December 1994 on remand, the trial court modified Tim's monthly support payments effective back to September 1, 1993. While that was the earliest allowable time, one year after the prior support order, to make a modification of child support effective without a material change of circumstances (*see* NDCC 14–09–08.4(3), also cited *ante* ), we believe that any modification will likely be different after the trial court reconsiders on remand. Therefore, the trial court is authorized to set a new effective date for any modification in light of the eventual amounts of support ordered and the equitable needs of both parents and the children.

### 4. *Conclusion*

We affirm the trial court's findings about Tim's good faith for his resignation from Dakota Clinic, his lack of economic misconduct, and the material change of circumstances. However, we reverse and remand for corrected findings on Tim's net income from self-employment so the trial court can satisfactorily set the amount of support for the children and Debra. The trial court may establish a new effective date for Tim's changed support obligations.

VANDE WALLE, C.J., and LEVINE, NEUMANN and SANDSTROM, JJ., concur.