**Kathy HELBLING, Plaintiff and Appellant,**

v.

**David HELBLING, Defendant and Appellee.**

Civ. No. 950083.

Supreme Court of North Dakota.

Dec. 29, 1995.

Thomas M. Tuntland, Mandan, for plaintiff and appellant.

Todd D. Kranda of Kelsch, Kelsch, Ruff & Austin, Mandan, for defendant and appellee.

LEVINE, Justice.

Kathy Helbling appeals from a district court order denying her motion to modify a child support order. We reverse and remand.

Kathy Helbling and David Helbling were married in 1974 and were divorced in 1991. They stipulated to joint legal custody of their four minor children, with David having physical custody and neither party paying child support. A judgment incorporating the stipulation was issued September 27, 1991.

The Helblings agreed to a change of custody in 1992. Joint legal custody continued, but Kathy took physical custody of the children. David agreed to pay $1,000 per month child support, to be reduced by $100 per month as each child reached nineteen or graduated from high school. David also agreed to pay tuition for the children to attend private school. An amended judgment incorporating the parties' agreement was issued September 1, 1992.

On June 30, 1994, Kathy moved for amendment of the child support order contained in the amended judgment. She requested that David's child support obligation be increased to conform to the support required by the child support guidelines. After a hearing on the motion on January 6, 1995, the district court determined that David was paying an appropriate amount of support. It therefore denied Kathy's motion to modify the child support order. Kathy appealed.

Kathy makes three arguments that the district court erred when it found that David was paying an appropriate amount of support. She claims that the district court first erred by requiring her to prove both David's income and all his possible income deductions. We agree.

Kathy sought amendment of the support order under section 14–09–08.4, NDCC. Section 14–09–08.4(3) states:

"[i]f a child support order sought to be amended was entered at least one year before the filing of a motion or petition for amendment, the court shall order the amendment of the child support order to conform the amount of child support pay-

ment to that required under the child support guidelines."

Kathy proved that the "child support order sought to be amended" was entered more than a year before the motion to amend was brought. The district court found, however, that Kathy did not bear her burden of proving that a change in David's child support obligation was justified based on his net monthly income.

■ A trial court's determination of child support is a finding of fact that will not be set aside unless clearly erroneous. Rule 52(a), NDRCivP; *Perala v. Carlson*, 520 N.W.2d 839 (N.D.1994). A finding of fact is clearly erroneous if it is the product of an erroneous view of the law, or if no evidence exists to support it, or if, on review of the entire evidence, we are left with a definite and firm conviction the trial court has made a mistake. *Reinecke v. Griffeth*, 533 N.W.2d 695 (N.D.1995). The allocation of the burden of proof is a question of law. *Sloan v. Jefferson*, 758 P.2d 81 (Alaska 1988); *see also Brandt v. Brandt*, 145 Wis.2d 394, 427 N.W.2d 126 (1988); *Tri–State Vehicle Leasing v. Dutton*, 461 A.2d 1007 (Del.Supr.1983). Questions of law are fully reviewable on appeal. *van Oosting v. van Oosting*, 521 N.W.2d 93 (N.D.1994).

■ The burden of proof has two components: the burden of going forward with the evidence and the burden of persuasion. *Matter of Stone Creek Channel Improvements*, 424 N.W.2d 894 (N.D.1988). The burden of persuasion, or risk of nonpersuasion, does not shift: it remains with the party having the burden of proof. 9 Wigmore, Evidence § 2489 at 300 (Chadbourn rev. 1981). The burden of going forward with the evidence will shift: "it may rest ... at one time upon one party and at another time upon the other." *Id.* at 301. The plaintiff or moving party generally bears the burden of proof. *Midland Oil and Royalty Co. v. Schuler*, 126 N.W.2d 149 (N.D.1964). If the party bearing the burden of proof presents evidence strong enough, if uncontradicted, to support a finding in her favor, that party has made a prima facie case. *Northwest Realty Co. v. Perez*, 81 S.D. 500, 137 N.W.2d 345 (1965); *see* 9 Wigmore, Evidence § 2494 at

387 (Chadbourn rev.1981). When the party with the burden of proof establishes a prima facie case, "the burden of going forward with the evidence . . . shifts to the defendant. If the defendant can impair the prima facie quality of [*i.e.*, rebut] the case against him, the burden [of going forward] returns to the party having the burden of proof." *Midland Oil,* 126 N.W.2d at 152. If the party having the burden of proof establishes a prima facie case, this party will prevail unless the opposing party offers "proof to the contrary." *Id.* at 153.

Kathy, as movant and plaintiff, had the burden of proof in this case. Under section 14–09–08.4, she had to prove that the existing level of child support was not in conformity with the amount required by the guidelines. Kathy introduced tax returns that showed an increase in David's gross income from $54,-214 in 1991, the year before the court established the existing child support obligation, to $73,252 in 1993, the year preceding Kathy's motion to increase child support. The 1993 tax return showed that David had claimed a $2,236 deduction for moving expenses. Kathy also introduced child support calculations based on David's increased income. These calculations showed that David's increased income made his existing child support obligation too low and not in conformity with the required child support level set by guidelines.

The parties agreed that David received relocation reimbursement payments of $12,-550.38 in 1993 and $12,536.69 in 1994. David argued that these payments should not be included in his income for child support purposes because they represented money paid to him for expenses resulting from a move to Nebraska. Yet, he offered no proof of his actual moving expenses or proof that his expenses equaled the reimbursement payments he received. He testified only that his employer had required him to make the move, and that his employer's policy was "when they ask you to relocate they will give you expenses for holding down two homes." Although David argued that his moving expenses were greater than the amount he was allowed to deduct from his federal taxes, he did not introduce any evidence to prove this point.

In its findings of fact, the district court stated that "[n]o evidence was presented which would establish that the reimbursed relocation expenses received by Defendant were in an amount in excess of the actual out-of-pocket expenses incurred by Defendant." The district court therefore subtracted the reimbursed relocation expense payments when it determined David's net income.

Under our child support guidelines, a court must first calculate an obligor's gross income.[1] NDAC § 75–02–04.1–01(2). " 'Gross income' means income from any source, in any form, but does not mean benefits received from means tested public assistance programs. . . ." *Id.* Once the court determines gross income, certain items, including tax payments and "[e]mployee expenses," are then subtracted to determine the obligor's net income. NDAC § 75–02–04.1–01(4). The obligor's net income is then used to set the support amount. NDAC § 75–02–04.1–02(3).

■ The district court properly included reimbursed relocation expense payments as part of David's gross income. The court erred, however, by subtracting the entirety of these payments when calculating David's net income. When Kathy showed an increase in David's income, offset by only small proven deductions for moving expenses, she made a prima facie case for increasing David's required child support payments. The burden of going forward therefore shifted to David, who was required to prove that he was entitled to a greater offset for moving expenses. Instead, the court required Kathy to prove a negative, that David was not entitled to a greater offset. Kathy had the risk of non-persuasion and the burden of going forward. She met her burden of going forward when she made a prima facie case. When a party makes a prima facie case, that party will prevail when the opponent fails to offer "proof to the contrary." *Midland Oil,*

**1.** This action was initiated in 1994 and the parties relied on the pre–1995 guidelines when the court heard the motion to modify. Therefore, references in text are to the pre–1995 guidelines and guideline section numbers.

126 N.W.2d at 153. The district court erred in failing to shift to David the burden of going forward. Because David failed to meet his burden of going forward and rebut Kathy's prima facie case, we conclude the court erred in finding that Kathy did not carry her burden of proof.

Kathy next argues that the court should have included any excess reimbursed relocation payments in David's net income regardless of whether David's receipt of these payments was a one-time occurrence. To the extent the court did not consider whether a portion of the nonrecurrent income should be available to the children, we agree.

Courts, by necessity, rely on past information about a child support obligor's income when calculating child support amounts.[2] *See* NDAC § 75–02–04.1–02(7) [stating that tax returns and wage statements are the primary means of documenting income for child support calculation]. Past income is generally the best predictor of future income and child support is based upon income. The guidelines broadly define "income" to include not only wages and salaries, but nonrecurrent payments such as bonuses, severance pay, capital gains, and gifts and prizes. NDAC § 75–02–04.1–01(2). Under section 75–02–04.1–01(4), NDAC, net income is calculated by deducting from gross income payments for tax, FICA, Medicare, health insurance, medical expenses, union dues, retirement contributions and required employee expenses. If a person's gross income fluctuates, as when nonrecurrent payments are received, the guidelines require that "information reflecting and covering a period of time sufficient to reveal the likely extent of fluctuations must be provided." NDAC § 75–02–04.1–02. There is no deduction from gross income, however, for nonrecurrent payments. No matter whether a payment is recurrent or not, the guidelines require that courts consider an obligor's net income "from all sources" when calculating child support. NDAC § 75–02–04.1–02(3).

■ In support of its decision not to count the reimbursed relocation payments as part of David's net income, the district court found that the payments "were received prior to the date of the Motion in this matter and there is no indication that Defendant would receive any additional moving expense reimbursements unless Defendant was relocated at some time in the future by his employer." Our law and the public policy inherent in the guidelines dictate that children should share in the child support obligor's good fortune. *See Houmann v. Houmann,* 499 N.W.2d 593 (N.D.1993). The district court erred by cutting off David's children from their share of any excess reimbursed relocation payments made to him based on the mere fact that those payments occurred in the past. On remand, if the district court determines that the past payments are unlikely to recur, it should exercise its discretion and consider awarding the children some portion of those excess relocation payments while also ordering a future reduction in support when the effect of the windfall ceases. The district court, ordinarily, should allow David's children to capture some portion of any extra income David received.

Finally, Kathy argues that the district court erred in its calculation of the deductions from David's gross income. The district court based its calculation of David's gross and net income on a pay stub that showed David's income for an eight-month period from January 1, 1994 to August 31, 1994. The court received this pay stub into evidence at the January 6, 1995, hearing as "Defendant's Exhibit 5." Based on this exhibit, the district court found:

"IX.

"Through August 31, 1994, Defendant had net year-to-date income of $22,440.03 which is his gross income of $53,737.25 reduced by the amount of $12,536.69 for

---

2. The current child support guidelines, amended effective January 1, 1995, explicitly state that: "(8). Calculations made under this chapter are ordinarily based upon recent past circumstances because past circumstances are typically a reliable indicator of future circumstances, particularly circumstances concerning income. If circumstances that materially affect the child support obligation are very likely to change in the near future, consideration may be given to the likely future circumstances." NDAC § 75–02–04.1–02(8).

reimbursed relocation expenses; the amount of $10,277.23 for U.S. Federal Income Tax; the amount of $2,451.73 for the Nebraska State Income Tax; the amount of $725.30 for the RRA Medicare; the amount of $3,101.27 for the RRA Tier I; and the amount of $2,205.00 for the RRA Tier II.

"X.

"Defendant's net year-to-date income figure of $22,440.03 divided by 17 (the number of semi-monthly pay periods from December 15, 1993 through August 31, 1994) results in an average semi-monthly net income of $1,320.00 or an average monthly net income of $2,640.00."

At the January 6, 1995, hearing, the district court also received into evidence "Defendant's Exhibit 6" which was a pay stub showing David's pay for the entire year of 1994. According to this exhibit, David received gross earnings of $70,995.42. He paid $13,124.11 in federal tax, $3,757.20 in RRA Tier I, $959.82 in RRA Medicare, $2,205.00 in RRA Tier II and $3,243.02 in Nebraska state tax. Subtracting these payments, and the $12,526.69 reimbursed relocation expense payment from David's total 1994 gross income, yields a net sum of $35,169.58. Dividing this annual net income figure by twelve results in a monthly net income of $2,930.79. This figure is more than $290 higher than the monthly net income figure the district court determined based on David's January 1 through August 31 income.

■■■ Our child support guidelines state that "[t]he *annual* total of all income considered in determining a child support obligation must be determined and then divided by twelve in order to determine the obligor's monthly net income." NDAC § 75–02–04.1–02(6) (emphasis added). It is error for a trial court to rely on a partial tax year's income unless "appropriate adjustments [are] made to the partial year to reflect only appropriate deductions, and to reflect the proportionate annual effect of deductions occurring unevenly throughout the year." *Mahoney v. Mahoney*, 538 N.W.2d 189 (N.D.1995) It is apparent that the district court did not adjust its calculation of net monthly income to re-

flect "the proportionate annual effect of deductions occurring unevenly throughout the year." *Id.* Even if there were evidence to support the district court's deduction of the whole of David's reimbursed relocation expense payments, it was error for the district court to calculate David's child support obligation based on only eight month's income without apportioning "uneven" deductions over a twelve-month period. This error is especially striking, because there was evidence showing David's total 1994 income.

Therefore, we reverse the child support order and remand for recalculation of David's child support obligation and arrearages in accordance with the child support guidelines and this opinion.

VANDE WALLE, C.J., and MESCHKE, NEUMANN, JJ., concur.

VANDE WALLE, Chief Justice, concurring in result.

I agree with the majority opinion. I write separately to balance Justice Sandstrom's special concurrence concerning nonrecurrent payments and the observation that "[t]his classification is not found in the guidelines."

Where the "windfall" is clearly one-time, a conclusion not necessarily inherent in the facts of this case, I believe the better procedure is for the trial court to automatically provide for a reduction in support when the effect of the windfall ceases. Such a procedure saves the parties from spending usually scarce monetary resources for court proceedings, as well as time and stress. It also is better judicial economy and saves the dwindling number of trial judges scarce judicial time. We should not require or encourage needless motions. If there is serious doubt whether or not the "windfall" is one-time, the trial court should not provide an automatic reduction but await a motion for reduction if the obligor's income diminishes.

I agree the guidelines should be followed. Blind adherence is not required where situations arise which are not contemplated by the guidelines. *E.g., Bergman v. Bergman*, 486 N.W.2d 243 (N.D.1992) [child support guidelines did not provide adequate guidance when

multiple families appeared simultaneously before trial court]; *Montgomery v. Montgomery,* 481 N.W.2d 234 (N.D.1992) [where obligor's monthly income exceeded maximum amount contemplated by guidelines, court must make further inquiry to determine amount appropriate to children's needs].

If guidelines must cover every conceivable possibility and courts must await a guideline in every such instance, we do the parties a disservice and we fail in our obligation as a separate and co-equal branch of government.

SANDSTROM, Justice, concurring specially.

I agree this case must be reversed and remanded.

I would emphasize this case is under the Child Support Guidelines which became effective in 1991, and not the revised guidelines which became effective in 1995. In cases governed by the 1995 guidelines, courts will need to consider the rule changes, which are appropriately not considered in this case.

I agree the relocation payments are income under N.D.Admin.Code § 75–02–04.1–01(5). The district court was required under N.D.Admin.Code § 75–02–04.1–02(3) to consider those relocation payments in determining the available funds for child support. The district court erred in not doing so.

The majority characterizes "bonuses, severance pay, capital gains, and gifts and prizes" as *nonrecurrent* payments. This classification is not found in the guidelines. Many of those payments may in fact be recurring.

N.D.Admin.Code § 75–02–04.1–02(7) provides: "Where gross income is subject to fluctuation ... information reflecting and covering a period of time sufficient to reveal the likely extent of fluctuations must be provided." Under the 1991 guidelines, the district court should consider the likely extent of income fluctuations in determining the child support obligation.

The guidelines contemplate circumstances such as those in this case, and provide the framework in which to handle them. Under N.D.C.C. § 14–09–09.7, the Department of Human Services adopts the Child Support Guidelines, and periodically the Department, not the judiciary, is to review, revise and, as appropriate, adopt additional guidelines. The judiciary should apply the guidelines, and the amount arrived at from that application is the rebuttably correct amount. N.D.C.C. § 14–09–09.7(3).