**Roland W. DALIN, Plaintiff and Appellee,**

v.

**Patricia Jo DALIN, Defendant and Appellant.**

**Civil No. 950304.**

Supreme Court of North Dakota.

April 8, 1996.

Ladd Ronald Erickson, Assistant State's Attorney, Child Support Enforcement, Mandan, for appellant.

Bryan Van Grinsven of Farhart, Lian, Maxson, Louser & Zent, Minot, for plaintiff and appellee.

NEUMANN, Justice.

Patricia Jo Dalin appeals from a judgment establishing child support obligations. We affirm in part, reverse in part, and remand.

Patricia and Roland were married in June 1989 and were divorced in January 1992. During the marriage, they had one child, Amy. Patricia and Roland disputed Amy's custody, and in *Dalin v. Dalin*, 512 N.W.2d 685 (N.D.1994), this court affirmed the trial court's award of custody to Patricia from August 25 to June 5 of each year and to Roland during the summer months. The trial court also had ordered Patricia and Roland to provide child support according to

the child support guidelines when not exercising custody over Amy. They failed to reach an agreement.

In May 1995, a hearing was held establishing Patricia and Roland's child support obligation. To support his calculation of his child support obligation, Roland offered as evidence loan summaries, his 1990 through 1994 income tax returns, and several worksheets calculating his annual self-employment income for the years 1990 through 1994, his five-year average annual self-employment income and monthly net income, and his child support obligation.

Roland is a self-employed farmer, who also owns numerous rental properties. Roland calculated his five-year average annual gross income at $7,073.54. He subtracted from that figure a standard deduction of $3,175.00, personal exemptions totaling $4,900.00, and a $46.50 health insurance deduction, arriving at an annual net income of negative $1,047.96 and a monthly net income of negative $87.33. Applying the child support guidelines, Roland determined his child support obligation should be $14.00 per month. But he agreed to pay $75.00 per month.

The trial court adopted Roland's calculations and ordered that Roland pay $75.00 per month while Amy is in Patricia's custody. The trial court also ordered, as recommended by Patricia's counsel, the Bismarck Regional Child Support Enforcement Unit, that Patricia pay $133.00 per month while Amy is in Roland's custody.

On appeal, Patricia makes two arguments that the trial court erred when it established Roland's child support obligation.[1] Patricia first argues the trial court erred when it found the evidence did not support an upward deviation from the presumptively correct amount of child support under section 75-02-04.1-09(2)(h) of the child support guidelines. Second, Patricia argues the trial court's finding regarding Roland's net income is clearly erroneous. We affirm on the first issue, but reverse and remand on the second.

■ Section 14-09-09.7(3), N.D.C.C., creates a rebuttable presumption that the amount of child support provided under the guidelines is the correct amount. *Smith v. Smith*, 538 N.W.2d 222, 225 (N.D.1995); N.D. Admin. Code ch. 75-02-04.1 ("Child Support Guidelines"). "A trial court may, however, deviate from the guideline amount, if it finds, by a preponderance of the evidence, the presumptive guideline amount is not the correct amount of support required, taking into consideration the best interests of the [child]." *Reinecke v. Griffeth*, 533 N.W.2d 695, 700 (N.D.1995).

■ Section 75-02-04.1-09(2) of the 1995 amended child support guidelines lists a number of factors that can rebut the presumptive correctness of the guideline amount. N.D. Admin. Code § 75-02-04.1-09(2). Under subdivision (h) of this subsection, the presumptive guideline amount is rebutted if:

"[A] preponderance of the evidence establishes that a deviation from the guidelines is in the best interest of the supported [child] and:

\* \* \* \*

h. The increased ability of an obligor, who has engaged in an asset transaction for the purpose of reducing the obligor's income available for payment of child support, to provide child support[.]"

N.D. Admin. Code § 75-02-04.1-09(2)(h). Patricia's counsel requested the trial court deviate upward from what Roland argued was the presumptively correct guideline amount of $14.00 per month (modified to $75.00 by Roland) to $500.00 per month. Counsel supported the request by claiming Roland's purchase in January 1995 of a 1995 pickup worth $22,000.00 qualified under section 75-02-04.1-09(2)(h). Patricia's counsel

---

1. Despite a poorly organized and argued brief by Patricia's counsel, we discern two primary arguments made on appeal. The brief also questioned the reliability of tax returns for determining self-employment income under the child support guidelines as well as the irony of applying the unemployed/underemployed provision under the guidelines and obtaining a child support award greater than that ordered for Roland, a self-employed farmer who also has considerable holdings in real estate. We are unable to determine if these issues were presented for our resolution, and we do not address them.

requested $500.00 because Roland pays $500.00 per month for the pickup and insurance. The trial court responded with the following finding:

"The purchase of a new pickup by [Roland] does not, by itself, prove that [Roland] was engaging in an asset transaction for the purpose of reducing his income available for payment of child support. [Roland] testified to his need for a reliable vehicle for family and business reasons and that he got a good deal with the purchase of this pickup. [Patricia] did not submit any evidence or calculations that would cause the Court to deviate from the child support guidelines."

A trial court's determination of child support is a finding of fact that will not be set aside unless clearly erroneous. *Perala v. Carlson,* 520 N.W.2d 839, 841 (N.D.1994). A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if, on the entire evidence, we are left with a definite and firm conviction that a mistake has been made. *Reinecke,* 533 N.W.2d at 698. As the party urging a deviation from the presumptively correct guideline amount, Patricia carried the burden of proving her argument. *Helbling v. Helbling,* 541 N.W.2d 443, 445–46 (N.D. 1995) (discussing the burden of proof).

■ A review of the record reveals Patricia failed to meet her burden because she did not offer enough evidence supporting a deviation from the guidelines under section 75–02–04.1–09(2)(h). Patricia did not show Roland's pickup purchase was made for the purpose of reducing income available for payment of child support. More specifically, she did not show Roland's income was less than it likely would have been if the pickup purchase had not taken place.[2] We determine there is evidence to support the trial court's finding, and thus the finding is not clearly erroneous.

Patricia next argues the trial court's finding regarding Roland's net income is clearly erroneous. We agree because, on the entire evidence, we are left with a definite and firm conviction that a mistake has been made.

■ The trial court made the following finding:

"Testimony was given and exhibits entered into evidence to determine [Roland and Patricia's] net income. Based on said evidence and [Roland's] calculations under the current child support guidelines, [Roland] would be required to pay the sum of Fourteen Dollars ($14.00) per month as and for child support...."

This finding suggests the trial court adopted, apparently without question, Roland's calculation of his child support obligation, which derived from the worksheets and summaries offered into evidence and which determined a monthly net income of negative $87.33. Because Roland's calculations were not a correct application of the child support guidelines, the trial court should not have adopted Roland's calculations. *Mahoney v. Mahoney,* 538 N.W.2d 189, 194 (N.D.1995) (indicating trial court "did not coherently assemble facts and figures from the evidence to determine [the obligor's] net income" but improperly adopted an expert's calculation).

The child support guidelines provide the method for determining the monthly net income of a self-employed obligor, like Roland. *E.g., Mahoney,* 538 N.W.2d at 194–95. Generally, though not solely, the income of a self-employed obligor will be documented through tax returns. *Id.;* N.D. Admin. Code § 75–02–04.1–02(7) (stating "[i]ncome must be documented through the use of tax returns, current wage statements, and other information sufficiently to fully apprise the court of all gross income"). To determine income from tax returns, expenses for the

---

2. Section 75–02–04.1–09(4) creates a presumption concerning asset transactions made for the purpose of reducing an obligor's income available for the payment of child support if three criteria are met. Those criteria are: (1) the transaction occurred after the birth of a child entitled to support; (2) the transaction occurred no more than twenty-four months before the commencement of the proceeding that initially

established the support order; and (3) the obligor's income is less than it likely would have been if the transactions had not taken place. N.D. Admin. Code § 75–02–04.1–09(4). As represented by Roland's counsel, Roland did not deduct the monthly pickup payment from his gross income to determine his monthly net income.

cost of producing income are deducted from the business' gross income to compute adjusted gross income. *Mahoney*, 538 N.W.2d at 194; N.D. Admin. Code § 75–02–04.1–05(1). After computing adjusted gross income, business expenses not requiring actual expenditure, such as depreciation, are added back, and costs actually incurred but not expensed, such as principal payments on business loans, may be deducted to arrive at net income from self-employment. *Mahoney*, 538 N.W.2d at 194; N.D. Admin. Code § 75–02–04.1–05(2).

■ Net income from self-employment is one of the income sources included in gross income. *Wilhelm v. Wilhelm*, 543 N.W.2d 488, 490 (N.D.1996). Gross income is the sum of the obligor's various income sources. *Id.*; N.D. Admin. Code § 75–02–04.1–01(5). After determining gross income, certain expenses, such as federal and state income tax obligations, are subtracted to arrive at net income. *See Mahoney*, 538 N.W.2d at 194–95; *see also Helbling*, 541 N.W.2d at 446–47; N.D. Admin. Code § 75–02–04.1–01(7). This figure is then divided by twelve, resulting in monthly net income. N.D. Admin. Code § 75–02–04.1–02(6). An obligor's monthly net income establishes that obligor's presumptively correct monthly child support obligation. *Id.* §§ 75–02–04.1–02(3), –10.

We direct the trial court to apply the above guideline method and recalculate Roland's child support obligation, with particular attention to Roland's calculation of adjusted gross income and depreciation for each year.[3] The trial court also should correct Roland's error of subtracting a standard deduction of $3,175.00 and personal exemptions totaling $4,900.00 from his five-year average annual self-employment income.[4] The guidelines do not provide for these deductions. Rather, in arriving at net income, Roland is allowed to deduct from his gross income (as calculated under the guidelines) certain expenses, including federal and state income tax obligations *based on application of standard deductions and tax tables. See Shipley v. Shipley*, 509 N.W.2d 49, 53 (N.D.1993); *see also Mahoney*, 538 N.W.2d at 195; N.D. Admin. Code § 75–02–04.1–01(7).

Because we remand this case for recalculation of Roland's child support obligation, we also direct the trial court to reconsider its order requiring child support payments by Patricia. We understand Patricia's counsel recommended Patricia pay child support while Amy is in Roland's custody,[5] but we note Patricia and Roland were ordered to provide support *according to the child support guidelines* when not exercising custody over Amy.

■ "Parents have a mutual duty to support their children." *Brakke v. Brakke*, 525 N.W.2d 687, 690 (N.D.1994). However, the child support guidelines "contemplate child support payments be made by the noncustodial parent to the custodial parent." *Id.*; N.D. Admin. Code § 75–02–04.1–02(1) (stating "[c]alculations of child support obligations provided for under this chapter consider and assume that one parent acts as a primary caregiver and the other parent contributes a payment of child support to the

3. The income tax returns Roland offered into evidence were not complete sets. For example, the signature page was not included in the 1990 set of returns.

4. In a post-argument letter, Roland's counsel conceded error in calculating Roland's child support obligation. Counsel recalculated and determined Roland's obligation at $102.00 per month. Because we remand this case to the trial court to recalculate Roland's child support obligation, we do not determine whether $102.00 per month is the presumptively correct guideline amount.

5. Following the May 1995 hearing, Patricia's counsel submitted to the trial court recommendations for child support, which included "[t]hat the Defendant, Pati Clausen, pay child support for the period from June 1 through August 31 the

amount of $133.00 per month beginning June 1, 1996." In the brief on appeal, Patricia's counsel argued "[s]ince [Patricia] has Amy in her home more than one-half of the time, [Roland] is the only parent who should be paying support.... Even so, the District Court treated this case as a *split custody arrangement.*" However, the counsel, not the trial court, characterized Patricia and Roland's custody arrangement as split custody. Under the child support guidelines, split custody "means a situation where the parents have more than one child in common, and where each parent has sole custody of at least one child." N.D. Admin. Code § 75–02–04.1–01(11). Patricia and Roland's custody arrangement does not meet this definition.

child's care"). Patricia is the custodial parent. *Brakke,* 525 N.W.2d at 690, (quoting section 75–02–04.1–01(4), N.D. Admin. Code, which defines custodial parent). Roland is the non-custodial parent. *See Smith,* 538 N.W.2d at 227; *see also* N.D. Admin. Code § 75–02–04.1–02(2) (stating "[c]alculations assume that the care given to the child during temporary periods when the child resides with the obligor or the obligor's relatives do not substitute for the child support obligation"). We direct the trial court to reconsider its order requiring child support payments by Patricia.

Affirmed in part, reversed in part and remanded.

VANDE WALLE, C.J., SANDSTROM and MESCHKE, JJ., and BERYL J. LEVINE, Surrogate Judge, concur.

The Honorable MARY MUEHLEN MARING was not a member of the Court when this case was heard and did not participate in this decision.