2010 ND 58

**MORTON COUNTY SOCIAL SERVICE BOARD as assignee for Jan Teske, Jan Teske, and K.T., minor child, by and through her guardian, Jan Teske, n/k/a Jan Thorson, Plaintiffs and Appellees**

v.

**Jeremiah CRAMER, Defendant and Appellant.**

No. 20090185.

Supreme Court of North Dakota.

April 6, 2010.

Benjamin C. Pulkrabek, Mandan, N.D., for plaintiffs and appellees.

Tom P. Slorby, Minot, N.D., for defendant and appellant.

KAPSNER, Justice.

[¶ 1] Jeremiah Cramer appeals from an order denying his motion to modify custody of the child he has with Jan Desjarlais ("Desjarlais"), formerly known as Jan Teske and Jan Thorson. Cramer contends the district court misapplied the law and its decision is not supported by the evidence. We affirm, concluding the court correctly applied the law and its decision is not clearly erroneous.

I

[¶ 2] Cramer and Desjarlais have one child together, who was born in 1999. In a 2003 judgment, the court found Cramer is the child's father and established a child support obligation for him. A September

6, 2006, amended judgment awarded Desjarlais sole custody of the child and granted Cramer visitation. Cramer did not consistently pay child support until after the amended judgment was entered.

[¶ 3] In 2001, Desjarlais married David Thorson. Later that year, Thorson was convicted of child molestation for conduct involving another child. Desjarlais thereafter sent her child to stay with her mother, and Desjarlais and Thorson were divorced in 2007.

[¶ 4] In November 2007, Desjarlais began a relationship with Larry Desjarlais. At the time, Larry Desjarlais was an inmate of the Department of Corrections and was living at the Bismarck Transition Center, and Desjarlais was living in Mandan. On February 27, 2008, Desjarlais and Larry Desjarlais traveled to Bottineau, taking the child with them. Larry Desjarlais's actions violated the terms of his sentence, and Desjarlais testified she was aware that he was a fugitive from justice. Larry Desjarlais became upset with the child and threatened the child while they were staying at a hotel and Desjarlais had to remove the child from the room. On March 2, 2008, Desjarlais brought the child to Mandan, dropped her off at school the next morning, returned to Bottineau, and asked her mother to pick the child up after school and take care of her. Desjarlais married Larry Desjarlais on March 4, 2008. Larry Desjarlais was apprehended a few months later.

[¶ 5] On March 22, 2008, Cramer learned about the child's situation when he went to Mandan for visitation with the child. Cramer picked the child up at her grandmother's house and then took the child with him to Minot, where he resides. Desjarlais returned to Mandan after learning the child was with Cramer.

[¶ 6] On March 26, 2008, Cramer moved to modify custody and requested an ex parte interim order granting him temporary custody of the child. He argued it was in the child's best interest to modify custody because Desjarlais married Larry Desjarlais, Larry Desjarlais is a fugitive from justice, Desjarlais took the child with her and Larry Desjarlais, and the child is scared of Larry Desjarlais. The court found there was good cause for an ex parte order and awarded Cramer temporary custody of the child.

[¶ 7] Desjarlais resisted Cramer's motion to modify custody, arguing it is in the child's best interests that she have custody because Cramer has a criminal record and is over $18,000 in arrears on his child support payments. In April 2008, the court decided Cramer had established a prima facie case to modify custody. The court concluded Cramer would have the burden of proving modification is necessary to serve the child's best interests and that the child's environment may endanger her health under N.D.C.C. § 14–09–06.6(5), because the motion was made within two years of the September 2006 order establishing custody.

[¶ 8] At hearings on the motion in June 2008 and August 2008, Cramer argued modification was necessary because of Desjarlais's relationship with Larry Desjarlais and because the child had excessive school absences while in Desjarlais's care. Desjarlais argued her relationship with Larry Desjarlais had ended and the child missed school because of health problems.

[¶ 9] In January 2009, the court issued an order, finding a change in custody was not necessarily in the child's best interests and it did not appear the child's present environment with Desjarlais would endanger her health or emotional development, but the court requested further information about Desjarlais's living situation and her relationship with Larry Desjarlais. In

February 2009, Cramer moved for a continuance and to reopen the record, arguing further discovery was necessary due to recent changes in Desjarlais's situation. Cramer also argued the two-year statutory limitation on modifying custody no longer applied because more than two years had elapsed since the September 2006 order establishing custody.

[¶ 10] At a May 2009 hearing, the parties presented further evidence, and the court entered a June 2009 order denying Cramer's motion to modify custody. The court found it was not in the child's best interests to modify custody and the child's environment with Desjarlais does not endanger her physical or emotional health or impair her emotional development.

[¶ 11] Cramer thereafter moved for a stay of execution of judgment pending appeal. During a hearing on the motion, the court denied the motion for a stay, and Cramer's attorney said:

> And I want to make this just in case the Court later contends I didn't raise the issue at the trial court level. I don't believe the limitations of the—the statutory limitations as to a motion brought within two years of the preceding motion apply, because we had the hearings after the two years had expired, and I believe also the prior Order may have been by stipulation. But I just want to raise that issue that I don't believe it applies so it's preserved.

The court stated that issue was not raised before the court denied Cramer's motion to modify custody and the court had not previously heard an argument that it applied the wrong standard. A written order, denying Cramer's motion for a stay of execution, was subsequently entered.

II

[¶ 12] Cramer argues the district court applied the wrong statutory standard for modifying custody. Cramer moved to modify custody within two years of a prior order establishing custody, but he claims the limitation on modification within two years of a prior order establishing custody does not apply because N.D.C.C. § 14–09–06.6(6) states that a "court may modify a prior custody order after the two-year period" following a prior order establishing custody has expired and the court entered the order deciding his current motion more than two years after the 2006 amended judgment. Although the district court did not specifically address this argument, Cramer raised the issue before the June 2009 order denying his motion was entered. We conclude Cramer properly preserved this issue for appeal.

[¶ 13] Section 14–09–06.6, N.D.C.C.,[1] provides the statutory requirements for post-judgment custody modifications, and states, in part:

1. Unless agreed to in writing by the parties, no motion to modify a custody order may be made earlier than two years after the date of entry of an order establishing custody, except in accordance with subsection 3.

    . . . .

3. The time limitation in subsections 1 and 2 does not apply if the court finds:

    a. The persistent and willful denial or interference with visitation;

    b. The child's present environment may endanger the child's physical or emotional health or impair the child's emotional development; or

---

1. Section 14–09–06.6, N.D.C.C., was amended effective August 1, 2009, and custody is now called residential responsibility. *See*

2009 N.D. Sess. Laws ch. 149. For purposes of this case, the prior version of the statute applies.

c. The primary physical care of the child has changed to the other parent for longer than six months.

. . . .

5. The court may not modify a prior custody order within the two-year period following the date of entry of an order establishing custody unless the court finds the modification is necessary to serve the best interest of the child and:

a. The persistent and willful denial or interference with visitation;

b. The child's present environment may endanger the child's physical or emotional health or impair the child's emotional development; or

c. The primary physical care of the child has changed to the other parent for longer than six months.

6. The court may modify a prior custody order after the two-year period following the date of entry of an order establishing custody if the court finds:

a. On the basis of facts that have arisen since the prior order or which were unknown to the court at the time of the prior order, a material change has occurred in the circumstances of the child or the parties; and

b. The modification is necessary to serve the best interest of the child.

[¶ 14] Cramer contends under the plain language of N.D.C.C. § 14–09–06.6(5) and (6), the standard the court applies to decide whether to modify custody depends upon when the court issues a decision on a motion to modify custody and not when the motion is made. This Court's guidelines for interpretation of statutes are well-established:

Interpretation of a statute is a question of law fully reviewable on appeal. Our primary goal in statutory construction is to ascertain the intent of the legislature, and we first look to the plain language of the statute and give each word of the statute its ordinary meaning. . . . If, however, the statute is ambiguous or if adherence to the strict letter of the statute would lead to an absurd or ludicrous result, a court may resort to extrinsic aids, such as legislative history, to interpret the statute. . . . We presume the legislature did not intend an absurd or ludicrous result or unjust consequences, and we construe statutes in a practical manner, giving consideration to the context of the statutes and the purpose for which they were enacted.

*State v. Brown*, 2009 ND 150, ¶ 15, 771 N.W.2d 267 (quoting *In re M.W.*, 2009 ND 55, ¶ 6, 764 N.W.2d 185) (citations omitted).

[¶ 15] The plain language of N.D.C.C. § 14–09–06.6(1) and (3), provides that a party may not move to modify custody within two years of a prior order establishing custody unless the court finds the child's present environment may endanger the child's physical or emotional health or impair the child's emotional development. Section 14–09–06.6(5), N.D.C.C., states, "[t]he court may not modify a prior custody order within the two-year period following the date of entry of an order establishing custody . . . [,]" and N.D.C.C. § 14–09–06.6(6) states, "[t]he court may modify a prior custody order after the two-year period. . . ."

[¶ 16] When we interpret a statute, we first look to the plain language of the statute to ascertain the legislature's intent, giving each word its ordinary meaning. *Brown*, 2009 ND 150, ¶ 15, 771 N.W.2d 267. However, we will construe statutes in a practical manner, giving consideration to the context of the statute and its purpose, if adherence to the strict letter of the statute would lead to an absurd or

ludicrous result. *Id.* If we interpret N.D.C.C. § 14–09–06.6 as· Cramer suggests, it would lead to an absurd result. Under Cramer's interpretation, subsections 1 and 3 would become meaningless, and a court or the parties could delay the proceedings until after the two-year period expired to change the standard for modification. Furthermore, the purpose of the legislation is to deter repeat custody litigation, sparing the children the painful, disruptive, and destabilizing effects of the litigation. *Hearing on S.B. 2167 Before the Senate Judiciary Comm.*, 55th N.D. Legis. Sess. (Jan. 21, 1997) (testimony of Sherry Mills Moore); *Graner v. Graner*, 2007 ND 139, ¶ 27, 738 N.W.2d 9. Children are subject to the painful and destabilizing effects of litigation from the time the motion to modify is made. The purpose of the legislation is not served if the stricter standard does not apply when, in cases such as this, the motion is made within two years but the court does not decide whether to grant or deny the motion until more than two years after a prior order is entered.

[¶ 17] Under N.D.C.C. § 14–09–06.6, the standard the court must apply to decide whether to modify custody depends upon when the motion to modify was made and not when the court ultimately decides the motion. In this case, Cramer moved to modify custody within two years of the prior order establishing custody, and therefore the stricter standard of N.D.C.C. § 14–09–06.6(5) applied. We conclude the district court correctly applied the law.

### III

[¶ 18] Cramer argues the district court's decision denying his motion is clearly erroneous. He contends the evidence established the child's environment with Desjarlais may endanger the child's physical or emotional health or impair her emotional development.

[¶ 19] A district court's decision whether to modify custody is a finding of fact, which will not be reversed on appeal unless it is clearly erroneous. *Laib v. Laib*, 2008 ND 129, ¶ 10, 751 N.W.2d 228. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, there is no evidence to support it, or this Court is convinced, based on the entire record, that a mistake has been made. *Id.*

[¶ 20] A party seeking a change in custody has the burden of proof. N.D.C.C. § 14–09–06.6(8). In this case, because the motion was made within two years of a prior order establishing custody, Cramer had the burden of proving that the modification is in the child's best interests and that the child's environment with Desjarlais may endanger her emotional or physical health or impair her emotional development.

[¶ 21] The district court found a change in custody was not in the child's best interests after applying the best interest factors under N.D.C.C. § 14–09–06.2 and the evidence did not establish the child's environment with Desjarlais would endanger her physical or emotional health or impair her emotional development. The court made specific findings about Cramer's claim the child's environment with Desjarlais would endanger her health:

> The two primary arguments that [Cramer] made to support his position that [the child's] present environment with [Desjarlais] may endanger her physical or emotional health or impair her emotional development were: (1) the potential involvement of Larry Desjarlais in [Desjarlais's] life, and (2) the number of [the child's] absences from school while she was in [Desjarlais's] care in grades 1–3.

At the time of the most recent hearing in this matter, [Desjarlais] was living in the mobile home that she purchased in February 2009. She purchased the home with the insurance proceeds from the fire involving her previous home and owns her current home. She works out of her home working for Google and doing daycare. Photographs of the home depict its condition to be clean and well maintained. [The child] has her own room in the home.

[Desjarlais] testified that she is in the process of divorcing Mr. Desjarlais, that she has not seen him since December 2008, and does not know his current whereabouts. The court records regarding the divorce indicate that the divorce remains pending and that there has been no activity on this file since September 2008. [Desjarlais] has obtained a domestic violence protection order against Mr. Desjarlais which will remain in effect until January 8, 2010.

Regarding [the child's] absences from school, [Desjarlais] testified that [the child's] absences from school were health related. Despite the excessive number of absences when she attended grades 1–3, the evidence indicates that she got good grades and did well at school. [The child] was active in extracurricular affairs, including dance and softball.

Except for the time that [Desjarlais] was with Larry Desjarlais, and off of her medication, she provided a stable and satisfactory home for [the child]. If Larry Desjarlais is out of the picture and [Desjarlais] is on her medication and in compliance with the Social Services recommendations, it does not appear that [the child's] present environment with [Desjarlais] would endanger her physical or emotional health or impair the child's emotional development.

The court also warned Desjarlais about further contact with Larry Desjarlais, stating:

Although the Court has denied the motion to change custody, the Court does recognize the concerns raised by [Cramer] regarding [Desjarlais's] care of [the child]. For these reasons, [Desjarlais] is not to permit any contact between Larry Desjarlais and [the child], she is required to remain on and take her prescribed medications for her diagnosed mental health conditions (unless otherwise recommended by her treating physician or therapist), and she must ensure that [the child's] school attendance is satisfactory (no excessive absences without written medical excuse from a doctor or health care provider). The failure to comply with these requirements may be considered a material change of circumstances sufficient to support a change of custody.

[¶ 22] Cramer argues the court's decision is clearly erroneous because there was overwhelming evidence the child's environment with Desjarlais endangers her health and emotional development. He contends the number of the child's absences from school while living with Desjarlais shows Desjarlais has grossly neglected the child's school attendance and education and put her own interests before the child.

[¶ 23] The district court considered the evidence about the child's school attendance while living with Desjarlais. There was evidence the child was sick often and that she had been to the doctor more than usual. Although Cramer disputes this evidence about the child's absences, the district court is in a better position to weigh the evidence and judge the witnesses' credibility. *Stanhope v. Phillips–Stanhope*, 2008 ND 61, ¶ 10, 747 N.W.2d 79. The court also found the child received good grades in school despite the absences

and was involved in extracurricular activities. The evidence supports the court's findings. *Cf. id.* at ¶¶ 12–14 (non-custodial parent alleged children were tardy or missed school, court said there was no showing this had a negative effect on the children, and the court's finding that there was not a material change in circumstances was not clearly erroneous).

[¶ 24] The court also considered Desjarlais's relationship with Larry Desjarlais and how that relationship affected her parenting in the past. The court found Desjarlais provided a stable and satisfactory home for the child, except while she was in a relationship with Larry Desjarlais and was not taking her medication. There was evidence Desjarlais has some mental health problems, including post-traumatic stress disorder, depression, anxiety, and borderline personality disorder; but she receives treatment and takes medication to help with these problems. There was evidence Desjarlais had stopped taking her medication when she was with Larry Desjarlais. Cramer testified that he believed Desjarlais was a very good parent and was doing a good job of raising the child until she left with Larry Desjarlais. The court also considered the current status of Desjarlais's relationship with Larry Desjarlais. The court found a divorce action was pending and Desjarlais had obtained a domestic violence restraining order against Larry Desjarlais. Desjarlais testified she intends to divorce Larry Desjarlais and she did not know where he was at the time of the May 2009 hearing. There was some argument about whether the evidence should have been limited to evidence about the facts and circumstances prior to Cramer's motion. There were no objections to evidence from the time period after Cramer filed his motion, and therefore any right to complain on appeal was waived. *See Reinecke v. Griffeth*, 533 N.W.2d 695, 702 (N.D.1995) (failure to object to use of financial documents waived evidentiary challenge). The evidence supports the court's findings.

[¶ 25] Furthermore, the court warned Desjarlais that any further contact between Larry Desjarlais and the child, the failure to take any medications prescribed by her doctor or therapist, and any future excessive school absences without a written medical excuse may be considered a material change of circumstances sufficient to support modifying custody. *Cf. Sweeney v. Sweeney*, 2002 ND 206, ¶ 15, 654 N.W.2d 407 (court's decision denying motion to modify custody was not clearly erroneous when court warned mother that further interference with visitation would result in a change of custody).

[¶ 26] Under the clearly erroneous standard of review, this Court does not reweigh the evidence or reassess the witnesses' credibility, and we will not retry the case or substitute our judgment for that of the district court simply because we might have reached a different result. *See Frueh v. Frueh*, 2009 ND 155, ¶ 16, 771 N.W.2d 593. The evidence supports the court's findings that the child's present environment with Desjarlais does not endanger the child's health or impair her emotional development. Moreover, Cramer does not specifically challenge the district court's findings about the best interest factors and that a change in custody would not necessarily be in the child's best interests. Applying our standard of review, we conclude the district court's decision is not clearly erroneous.

IV

[¶ 27] We affirm the district court's order denying Cramer's motion to modify custody, concluding the court correctly applied the law and its decision is not clearly erroneous.

[¶ 28]   GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, and DANIEL J. CROTHERS, JJ., concur.

SANDSTROM, Justice, dissenting.

[¶ 29]   Because the district court erred as a matter of law and fact, I respectfully dissent.

[¶ 30]   As declared by statute, there is no presumption that a child goes to the mother or the father. *See* N.D.C.C. § 14–09–29. The judicial system must not lose sight of this public policy of the State of North Dakota.

[¶ 31]   The mother, Jan Teske, was twenty-two years old when she had sex with a seventeen-year-old high school student, Jeremiah Cramer.  A child resulted. Cramer did not know whether the child was his or someone else's.  Tests determined Cramer was the father.  He got behind in his child support payments while still in high school.

[¶ 32]   The mother married child sexual predator David Thorson.  She says she did not know Thorson's history of child sexual abuse when she married him.  When she learned he was a child molester, she did not leave him; instead, she gave the child to her mother to care for.

[¶ 33]   After Thorson was sent to prison for child sexual abuse, she did not divorce him until she took up with Larry Desjarlais, a convicted felon on work release. She helped Desjarlais escape from a halfway house.  She fled with the fleeing felon, taking the child with them.  When Desjarlais threatened to kill the child, she took the child to her mother, dropped the child off, and resumed flight with the fleeing felon.  A few days later, she married the man who had threatened to kill her child.

[¶ 34]   In 2008, the mother was convicted of theft of services, while the father was convicted of possession of marijuana and paraphernalia in 2005.

[¶ 35]   The father has grown up, married, and secured steady employment. When he learned that the child had been dropped off with the grandmother, he secured a court order for temporary custody. The child led a loving and stable life with the father and his family.

[¶ 36]   When Desjarlais was sent back to prison, the mother again became interested in the child and again sought custody.  The district court gave custody back to the mother.

[¶ 37]   The district court said the child had had a stable life with the mother and a stable life with the father.  The child regularly attended school when in the custody of the father.  While with the mother, the child had a very poor school attendance record.  The mother said that was because the child was often sick.  The child said it was because the mother often would not get up in the morning to take the child to school.  The district court minimized the poor attendance at school by saying the child's grades were acceptable.

[¶ 38]   The mother, an adult when she conceived the child with a child, has a consistent pattern of putting her interests and desires ahead of the best interests of the child.  When it became clear that she was living with a child sexual abuser, instead of leaving him, she gave the child to her mother to care for.  She then took up with a convicted felon.  When he "didn't like the restrictions" on him, she helped him in escaping and in unlawful flight. When he threatened to kill the child, the mother again gave the child to her mother to care for and then resumed the unlawful flight and married him.  The mother said—during the custody proceeding—that she is going to divorce him, but there has been no divorce, and she was still wearing her wedding ring during the proceeding.

[¶ 39]   What is past is prologue.  *See, e.g., Hentz v. Hentz*, 2001 ND 69, ¶ 12, 624

N.W.2d 694 (citation omitted) ("Although it is impossible to be certain what might occur in the future, any prediction of the future requires some reflection into the past conduct of the parties.")

[¶ 40]  As a matter of law, the district court erred when it ignored the fifteen months that the child was in the safe and stable home of the father before the decision.  *See*  N.D.C.C.  § 14–09–06.2(1)(d); *see, e.g., Bernhardt v. Harrington,* 2009 ND 189, ¶ 15, 775 N.W.2d 682 (noting that factor (d) addresses past stability of environment, including a consideration of place or physical setting, as well as a consideration of the prior family unit and its lifestyle as part of that setting).

[¶ 41]  In applying the best interests factors, the district court clearly erred. *See* N.D.C.C. § 14–09–06.2.  The choice was between a father who was still a child when his child was conceived—a father who has now grown up—and a mother who was an adult when the child was conceived and born—a mother who has never grown up.  The district court either made no finding or found each factor to favor both. It could do this only by minimizing the effect of conduct (the abysmal school attendance while with the mother) or excluding conduct (living with a child molester and giving the child to her mother, and fleeing with the child with a felon who threatened to kill the child, and giving the child to her mother).

[¶ 42]  As a matter of public policy in North Dakota, there is no presumption that the child goes to the mother. *See* N.D.C.C. § 14–09–29.  As a matter of public policy, the best interests of the child must prevail. *See* N.D.C.C. § 14–09–06.2. I would reverse.

[¶ 43]   DALE V. SANDSTROM