2015 ND 169

**Brenda Denise SCHIELE, Plaintiff and Appellee**

v.

**Bradley Allen SCHIELE, Defendant and Appellant.**

**No. 20140371.**

Supreme Court of North Dakota.

July 1, 2015.

Melinda Hanson Weerts and Tasha M. Gahner, Fargo, ND, for plaintiff and appellee, submitted on brief.

Maureen Holman, Fargo, ND, for defendant and appellant; submitted on brief.

KAPSNER, Justice.

[¶ 1]  Bradley Schiele appeals from the amended divorce judgment. We conclude the district court did not err in ordering Bradley Schiele to pay child support and did not err in failing to offset the child support obligation based on the benefits the child receives. We affirm the second amended judgment.

I

[¶ 2]  The parties married in 1992 and divorced in 2012. Under the divorce judgment, the parties were awarded joint decision making for their two minor children, and Brenda Schiele was awarded primary residential responsibility. At the time the divorce judgment was entered, neither party had residential responsibility for their youngest child, C.B.S., as he was in the custody of the State and resided at the Jamestown State Hospital, and the divorce judgment did not provide a child support obligation for C.B.S. In spring 2013, C.B.S. was admitted into the Life Skills and Transition Center ("the Center") in Grafton; Cass County Social Services closed its case, effective April 10, 2013, and returned residential responsibility of C.B.S. to the parties, "per the terms of [their] divorce decree."

[¶ 3]  Currently, C.B.S., the parties' only minor child, does not live with either party. He is severely autistic, lives at the Center, and nearly all his expenses, including food, clothing, and lodging, are paid by *Medicaid and Supplemental Security Income* ("SSI"). In October 2013, Brenda Schiele moved to establish or modify child support for C.B.S. No written order was issued after the hearing on the motion, but the district court orally ruled Bradley Schiele had an obligation to pay child sup-

port, effective October 2013. In January 2014, Bradley Schiele moved for relief from the judgment, or alternatively, to amend the judgment, requesting the parties' divorce judgment be amended to provide that neither party be awarded primary residential responsibility of C.B.S. because the child did not live with either party. The referee denied the motion because it was untimely and found Bradley Schiele had not alleged facts to support modifying residential responsibility. Bradley Schiele filed a request for review of the referee's decision, and the district court affirmed. The district court remanded the matter to the referee for a determination of child support, and a second amended divorce judgment was entered.

## II

[¶ 4] On appeal, Bradley Schiele argues the district court erred in ruling he had an obligation to pay child support while C.B.S. was not living in either party's home and erred in determining he was not entitled to an offset of his child support obligation for benefits paid on behalf of C.B.S.

[¶ 5] "Child support determinations involve questions of law which are subject to a de novo standard of review, findings of fact which are subject to a clearly erroneous standard of review, and may, in some limited areas, be matters of discretion subject to an abuse-of-discretion standard of review." *Berge v. Berge*, 2006 ND 46, ¶ 7, 710 N.W.2d 417.

## III

[¶ 6] Bradley Schiele argues the district court erred in ruling he had an obligation to pay child support when C.B.S. is not living in either party's home. Although the divorce judgment labeled Brenda Schiele as the parent with primary residential responsibility, Bradley Schiele argues the factual circumstances are not consistent with the definition of residential responsibility. Bradley Schiele argues neither party is providing a residence for C.B.S. because C.B.S. is residing at the Center, a residence maintained by the State and paid for by Medicaid; he also maintains that C.B.S.'s primary caregiver, as defined by N.D. Admin. Code § 75–02–04.1–01(9), is the Center, not Brenda Schiele. Because neither party has "true" residential responsibility for C.B.S. and neither party is the primary caregiver, Bradley Schiele maintains the district court should have concluded the child support obligation would commence when C.B.S. is primarily residing in Brenda Schiele's home. Bradley Schiele does not cite to any caselaw to support his position as he asserts there are no North Dakota cases which discuss the child support guidelines' applicability to a situation in which the child is in a residential placement, outside the home of either parent, and not at the expense or discretion of either parent.

[¶ 7] Parents have a mutual duty to support their children, and a "court may compel either or both of the parents to provide for the support of their children." N.D.C.C. § 14–09–08. Under N.D.C.C. § 14–09–09.7(1), the Department of Human Services is authorized to "establish child support guidelines to assist courts in determining the amount a parent should be expected to contribute toward the support of the child." The Department of Human Services has promulgated guidelines for child support in chapter 75–02–04.1 of the state's administrative code. *Crandall v. Crandall*, 2011 ND 136, ¶ 5, 799 N.W.2d 388. Administrative regulations are construed using rules of statutory construction. *Id.* at ¶ 6. "Statutory inter-

pretation is a question of law, fully reviewable on appeal." *Id.* (citation omitted).

[¶ 8] A "[d]etermination of a child support obligation is appropriate in any matter where the child and both of the child's parents do not reside together." N.D. Admin. Code § 75–02–04.1–02(9). "A support obligation should be established in each case where the obligor has any income." N.D. Admin. Code § 75–02–04.1–04. Except as provided in N.D. Admin. Code § 75–02–04.1–08.2 for equal residential responsibility situations, "calculations of child support obligations . . . consider and assume that one parent acts as a primary caregiver and the other parent contributes a payment of child support to the child's care." N.D. Admin. Code § 75–02–04.1–02(1). The general instructions for determining child support contemplate the primary caregiving parent is the obligee and is owed a duty of support. *See* N.D. Admin. Code §§ 75–02–04.1–01(7) and (8) (defining obligee and obligor) and 75–02–04.1–02 (general instructions for determining support amount); *see also* N.D.C.C. § 14–09–09.10(12) and (13) (defining obligee and obligor). The parent who is not the primary caregiver is the obligor and the person owing a duty of support. *Crandall,* 2011 ND 136, ¶ 7, 799 N.W.2d 388.

[¶ 9] Brenda Schiele argues that because C.B.S. and both of his parents do not reside together, the determination of a child support obligation is appropriate. *See* N.D. Admin. Code § 75–02–04.1–02(9). Because Bradley Schiele does not appear to dispute the court's factual findings, Brenda Schiele maintains his arguments involve questions of law. She asserts the issues on appeal are questions of law which are subject to the de novo standard of review. *See Berge,* 2006 ND 46, ¶ 7, 710 N.W.2d 417 (child support determinations involving questions of law are subject to

the de novo standard of review). While Brenda Schiele acknowledges C.B.S. does not currently reside with her, she argues state law does not require a parent with residential responsibility to meet that responsibility in a specific location, such as in a home with that parent. For example, a parent may choose to have their child attend a boarding school or a treatment facility or hospital to address the child's needs. In these examples, Brenda Schiele argues the parent would still be meeting the responsibility of providing a home for the child. . Currently, C.B.S. is living at the Center, and she maintains this arrangement is not by court order. She argues C.B.S.'s ongoing treatment at the Center is not mandated by anyone; rather, it is a voluntary placement by the parties, and the goal of C.B.S.'s treatment is to return to Brenda Schiele's home and care.

[¶ 10] Bradley Schiele argues the Center, rather than Brenda Schiele, is C.B.S.'s primary caregiver, while Brenda Schiele maintains she is C.B.S.'s primary caregiver. Brenda Schiele argues the record reflects that she travels to Grafton at least once a week to visit C.B.S. and to ensure his needs are being met; she attends meetings for his treatment and education, and purchases food, clothing, and other items for his special needs. She notes Bradley Schiele visits only once or twice a month and makes minimal purchases for C.B.S. She argues she clearly falls within the definition of "primary caregiver" and that nowhere in the definition does it require the child to live in the parent's home.

[¶ 11] A "parent with primary residential responsibility" is defined as "a parent who acts as the primary caregiver on a regular basis for a proportion of time greater than the obligor, regardless of description such as 'shared' or 'joint' parental rights and responsibilities given in relevant judgments, decrees, or orders." N.D.

Admin. Code § 75–02–04.1–01(9); *see also* N.D.C.C. § 14–09–00.1(6) and (7) (defining "primary residential responsibility" as "a parent with more than fifty percent of the residential responsibility" and "residential responsibility" as "a parent's responsibility to provide a home for the child").

[¶ 12] In *Boumont v. Boumont,* although the parties' divorce judgment awarded them joint physical custody of their children with each parent having physical custody one-half of the time, the parties did not actually divide parenting time equally, and the children were with their mother more than one-half of the time. 2005 ND 20, ¶ 2, 691 N.W.2d 278. The mother requested an increase in child support; the trial court found the mother was the custodial parent as she acted as the children's primary caregiver for a proportionately greater amount of time and was entitled to a larger amount of child support under the guidelines. *Id.* This Court reversed the trial court's determination, holding that the divorce judgment's language controlled, regardless of the parties' actual practices. *Id.* at ¶¶ 9–10. This Court noted it "has previously relied on the language of court orders, even where reality may differ, to promote bright-line rules and the strict construction of unambiguous language in the Child Support Guidelines," and "[i]n situations where the court order provides for equal physical custody, the court order controls the child support, regardless of the actual custodial arrangement exercised by the parties." *Id.* at ¶ 10. This Court also emphasized that a party's remedy for situations in which the order does not accurately reflect the reality is to request a modification of the custody order. *Id.*

[¶ 13] Here, the parties' divorce judgment awarded Brenda Schiele primary residential responsibility of the parties' children. Like in *Boumont,* regardless of the actual underlying factual circumstances, the language of the parties' divorce judgment controls. *See Boumont,* 2005 ND 20, ¶ 10, 691 N.W.2d 278. We conclude the district court did not err in ordering Bradley Schiele to pay child support for C.B.S., even when the child does not currently live in either party's home.

IV

[¶ 14] Bradley Schiele also argues the district court erred in failing to offset his child support obligation with the benefits C.B.S. receives from Medicaid and SSI based on N.D. Admin. Code § 75–02–04.1–02(11), which provides:

A payment of children's benefits made to or on behalf of a child who is not living with the obligor must be credited as a payment toward the obligor's child support obligation in the month (or other period) the payment is intended to cover, but may not be credited as a payment toward the child support obligation for any other month or period.

"Children's benefits" are defined as:

a payment, to or on behalf of a child of the person whose income is being determined, made by a government, insurance company, trust, pension fund, or similar entity, derivative of the parent's benefits or a result of the relationship of parent and child between such person and such child. Children's benefits do not mean benefits received from public assistance programs that are means tested or provided in the form of subsidy payments made to adoptive parents.

N.D. Admin. Code § 75–02–04.1–01(3). Bradley Schiele acknowledges this particular subsection of the child support guidelines has traditionally been applied when considering social security benefits which the child receives because a parent is disabled. *See generally Norberg v. Norberg,* 2014 ND 90, 845 N.W.2d 348.

[¶ 15]   Bradley Schiele argues the benefits C.B.S. receives from Medicaid and SSI are payments made on behalf of a child and should be considered as an offset for his child support determination.   He argues the benefits are not means tested; rather, they are related to C.B.S.'s education.   He also argues the benefits are made by a government entity, the State of North Dakota, and they are derivative of the relationship between the parent and child because C.B.S. would not be eligible if he were not a child of North Dakota residents.

[¶ 16]   Brenda Schiele contends that Bradley Schiele's separate argument, that C.B.S.'s benefits are derivative of the relationship between parent and child because C.B.S. would not be eligible for such benefits if he were not a child of North Dakota residents, has been waived because his argument was raised for the first time on appeal.   She also notes Bradley Schiele provided no evidence or authority for his position because the source of the benefits C.B.S. receives and the criteria for receiving such benefits is not specifically identified in the record.   A party may not raise an issue or contention that was not previously raised or considered in the lower court for the first time on appeal.   *S.H.B. v. T.A.H.*, 2010 ND 149, ¶ 12, 786 N.W.2d 706.   "If a party fails to properly raise an issue or argument before the trial court, the party is precluded from raising that issue or argument on appeal."   *Id.*   Because it does not appear that Bradley Schiele raised the issue of whether C.B.S.'s benefits are derivative of the relationship between parent and child because C.B.S. is a child of North Dakota residents at the trial court level, he is precluded from raising that issue on appeal.

[¶ 17]   Our caselaw reflects it is the party who earned the social security benefits that is entitled to credit against a child support obligation.   *Norberg*, 2014 ND 90, ¶ 47, 845 N.W.2d 348. In *Norberg*, the children's benefits were obtained as a result of the mother's disability, and the benefits substituted for the reduction in her income resulting from her disability.   *Id.* at ¶ 48.   This Court acknowledged the father had a duty to support his children, and he did not earn the social security benefits the children received.   *Id.* Thus, this Court held his duty to provide child support was not relieved when the children received benefits that were not attributable to him.   *Id.* Here, there was no evidence, supported by proper foundation, regarding the source of the benefits that C.B.S. receives, such as whether the benefits were attributable to Brenda Schiele, Bradley Schiele, or C.B.S.

[¶ 18]   The district court in this case concluded the credit or offset of child support that Bradley Schiele proposed did not conform with the child support guidelines.   The district court noted, "There is no evidence before the Court for it to conclude the Medicaid benefits [C.B.S.] receives are in any way derivative of [Bradley Schiele's] benefits or as a result of the parent/child relationship."   Acknowledging the definition of "children's benefits" requires that the benefits not be means tested, the district court noted Bradley Schiele "failed to offer the Court any evidence to support the conclusion that Medicaid eligibility and ensuing benefits are unrelated to income (means tested)."   Thus, the district court found it "[could not] conclude the child's receipt of Medicaid benefits conforms to the definition of 'children's benefits' for child support purposes."   There is no evidence in the record, supported by proper foundation, regarding the source of the benefits or the criteria for receipt of such benefits.   Bradley Schiele has failed to support his allegation that the benefits C.B.S. receives fall into the definition of

"children's benefits" as defined in N.D. Admin. Code § 75–02–04.1–01(3), and "neither this court nor the district court has any duty or obligation to ferret through the record to locate evidence to support factual allegations." *Peterson v. Zerr*, 477 N.W.2d 230, 235 (N.D.1991).

[¶ 19] We conclude the district court did not err in failing to offset Bradley Schiele's child support obligation based on the benefits C.B.S. receives.

## V

[¶ 20] We conclude the district court did not err in ordering Bradley Schiele to pay child support and did not err in failing to offset the child support obligation based on the benefits the child receives. We affirm the second amended judgment.

[¶ 21] GERALD W. VANDE WALLE, C.J., concurs.

McEVERS, Justice, concurring in the result.

[¶ 22] I reluctantly concur in the result reached by the majority. While I agree in principle with some of the logic in Justice Sandstrom's dissent, it appears the district court followed the law as it exists.

[¶ 23] As noted by the dissent, N.D.C.C. § 14–09–09.7(4) creates a rebuttable presumption that the amount of child support that would result from application of the child support guidelines is correct. The statute further provides:

> The presumption may be rebutted if a preponderance of the evidence in a contested matter establishes, *applying criteria established by the child support agency* which take into consideration the best interests of the child, that the child support amount established under the guidelines is not the correct amount of child support.

N.D.C.C. § 14–09–09.7(4) (emphasis added). The statute only allows for the presumption to be rebutted under criteria established by the child support agency. The criteria under the guidelines for rebutting the presumption are set forth in N.D. Admin. Code § 75–02–04.1–09, but none of them would apply to the facts and circumstances of this case. The current child support guidelines do not appear to contemplate a child in a residential placement fully covered by Medicaid and Supplemental Security Income, among the criteria for rebutting the presumption.

[¶ 24] Under previous authority, the district court could have done what the dissent suggests. In *Bergman v. Bergman*, 486 N.W.2d 243, 245 (N.D.1992), this Court recognized that the child support guidelines could be rebutted by evidence establishing that factors not considered by the guidelines would result in a hardship for the obligor or supported child. However, the version of N.D.C.C. § 14–09–09.7 at the time *Bergman* was decided was slightly different and provided:

> The presumption may be rebutted if a preponderance of the evidence in a contested matter establishes *that factors not considered by the guidelines* will result in an undue hardship to the obligor or a child for whom support is sought.

N.D.C.C. § 14–09–09.7(3) (1989); *see also Bergman*, 486 N.W.2d at 245 n. 2. It appears the legislature intentionally limited the district court's discretion, in regard to the presumption, by narrowing the criteria on which the court may rely to deviate from the presumptively correct amount. *See Horner v. Horner*, 549 N.W.2d 669, 670 (N.D.1996) (discussing the legislature's 1993 amendments to N.D.C.C. § 14–09–09.7(3) requiring the child support guidelines to establish the available criteria for rebutting the presumptive amount and

noting N.D. Admin. Code § 75–02–04.1–09 plainly limits the factors available for rebuttal to those listed). In *In the Interest of L.D.C.*, this Court stated, "N.D. Admin. Code § 75–02–04.1–09(2) lists specific circumstances under which the presumptively correct amount would be rebutted. The list of available criteria is *exclusive*." 1997 ND 104, ¶ 8, 564 N.W.2d 298 (emphasis added) (citing *Horner*, at 670).

[¶ 25] Under the divorce judgment, Brenda Schiele was awarded primary residential responsibility for the child and the parties have joint decisionmaking authority. The child is voluntarily placed in the Life Skills and Transition Center. Rather than say that neither parent has actual responsibility to provide a home for the child, the more rational outcome would be to award both parents equal residential responsibility, resulting in an offset of income for child support purposes. However, rather than move for equal residential responsibility, Bradley Schiele moved the court to amend the judgment to provide neither party be awarded primary residential responsibility. That motion was denied and has not been appealed. Regardless of what the parties could have or should have done, based on the issues raised on appeal, the majority has correctly concluded that the district court did not err in ordering Bradley Schiele to pay child support nor in failing to offset the obligation based on the benefits the child receives.

[¶ 26] DANIEL J. CROTHERS, J., concurs.

SANDSTROM, Justice, dissenting.

[¶ 27] The majority says that one parent who is not supporting a child must pay more than $24,000 per year in child support to the other parent who is not supporting the child. I respectfully dissent.

[¶ 28] Currently, the parties' only minor child does not live with either party. He is severely autistic and lives at the Life Skills and Transition Center in Grafton, and the record reflects that all his expenses, including food, clothing, and lodging, are paid by Medicaid and Supplemental Security Income. These government payments are approximately $22,225 per month to cover the child's needs. The parents pay none of these expenses. The mother said she spends $200–300 per month for "incidentals."

[¶ 29] The judicial referee ordered the father to pay child support of $2,053 per month (more than $24,000 per year) to the mother for child support for the child she does not care for. The majority affirms.

[¶ 30] In the context of child, "residential responsibility" is defined as "a parent's responsibility to provide a home for the child." N.D.C.C. § 14–09–00.1(7). And "primary residential responsibility" is defined as "a parent with more than fifty percent of the residential responsibility." N.D.C.C. § 14–09–00.1(6). Under the facts of this case, neither parent has actual responsibility to provide a home for the child.

[¶ 31] The majority, like the referee below, looks only at the rules referred to as the "child support guidelines." But the rules are adopted only to implement the statute, and the statute says:

*There is a rebuttable presumption that the amount of child support that would result from the application of the child support guidelines is the correct amount of child support.* The presumption may be rebutted if a preponderance of the evidence in a contested matter establishes, applying criteria established by the child support agency which take into consideration the best interests of the child, that the child support amount established under the guidelines is not the

correct amount of child support. A written finding or a specific finding on the record must be made if the court determines that the presumption has been rebutted.

N.D.C.C. § 14–09–09.7(4) (emphasis added). On the basis of the undisputed facts in this record, where neither parent is in fact supporting the child, the presumption is rebutted.

[¶ 32]   Although the statute permits the agency to specify criteria which rebut the guideline amounts, the statutory language does not limit rebuttal to such criteria. The second sentence of subsection 4 quoted above says the presumption "may" be rebutted by agency-designated criteria. The "may" used by the statute is permissive and non-exclusive, as opposed to the limiting phrase "may only," which the statute does not use. But even if the criteria for rebuttal of the presumption is limited to the contents of the guidelines themselves, the presumption is rebutted.

[¶ 33]   The fundamental criteria or premise of the child support guidelines themselves is that they "consider and assume that one parent acts as a primary caregiver and the other parent contributes a payment of child support to the child's care." N.D. Admin. Code § 75–02–04.1–02(1). That is not the case here. Neither parent is serving as the primary caregiver. As the Century Code instructs, "When the reason of a rule ceases so should the rule itself." N.D.C.C. § 31–11–05(1).

[¶ 34]   If any interpretation of the statutes or rules is necessary, the Century Code says "[i]nterpretation must be reasonable," N.D.C.C. § 31–11–05(33), and this Court has repeatedly said statutes must be construed to avoid absurd and ludicrous results. *See, e.g., Morton County Social Service Board v. Cramer,* 2010 ND 58, ¶ 16, 780 N.W.2d 688; *Kappenman v. Klipfel,* 2009 ND 89, ¶ 21, 765 N.W.2d

716; *Selzler v. Selzler,* 2001 ND 138, ¶ 10, 631 N.W.2d 564. It is absurd to say that one parent who is not supporting a child is required to pay child support to the other parent who is not supporting the child.

[¶ 35]   The presumption is rebutted. I would reverse.

[¶ 36]   DALE SANDSTROM