# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2025 ND 61

Benjamin Jones,                     Plaintiff, Appellant, and Cross-Appellee

v.

Melanie Jones,                      Defendant, Appellee, and Cross-Appellant

## No. 20240212

Appeal from the District Court of Renville County, Northeast Judicial District, the Honorable Michael P. Hurly, Judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Opinion of the Court by McEvers, Justice.

Erin M. Conroy, Bottineau, ND, for plaintiff, appellant, and cross-appellee.

Christopher E. Rausch, Bismarck, ND, for defendant, appellee, and cross-appellant.

**McEvers, Justice.**

[¶1]   Benjamin Jones appeals from a divorce judgment, challenging the property division, spousal support, and child support. He argues the district court erred in assigning no equity in the marital home, awarding spousal support, and omitting spousal support and in-kind income from its child support calculation. Melanie Jones cross-appeals from the judgment, arguing the court erred in awarding primary residential responsibility of their minor children to Benjamin Jones. We affirm in part, concluding the court did not clearly err in awarding primary residential responsibility to Benjamin Jones; and reverse in part, concluding the court erred in reserving ruling on the marital home and debt consolidation loan valuations, valuing the marital home and corresponding debt without making findings as to the valuation date, and calculating child support. We remand for the court to clarify the valuation date for the marital property and debt, make specific findings if another valuation date for the marital home is fair and equitable, redistribute the marital estate if any valuations change, reconsider spousal support in light of any redistribution of property, and recalculate child support to include any spousal support.

I

[¶2]   Benjamin Jones and Melanie Jones were married in 2003 and have two minor children, E.J. (born in 2008) and M.J. (born in 2011). Since 2008, the parties have resided in Glenburn, North Dakota. In 2010, Melanie Jones's parents, Dennis and Lavonne Hensen, entered into a contract for deed with Benjamin Jones and Melanie Jones for the latter parties to purchase a modular home and surrounding acreage ("marital home") for $217,200. The contract states that payments are to be made quarterly in the amount of $3,297.76 at 2% interest. In the event of a default, Hensens have the right, after providing a five-day notice, to accelerate the debt and make remaining payments due immediately. During the Covid-19 pandemic, Dennis Hensen offered to suspend payments on the contract for deed. Since then, no payments have been made, and an outstanding debt remains.

[¶3] In March 2023, Benjamin Jones commenced this divorce action. On or about February 14, 2024, Dennis Hensen notified the parties of his intention to declare default, accelerate the debt, and cancel the contract for deed. Trial in this divorce action was held on February 22 and 23, 2024. After trial, the district court issued its findings of fact, conclusions of law, and order for judgment. The court granted the divorce and awarded primary residential responsibility of the children to Benjamin Jones. The court divided the property and debts, finding the parties had zero equity in the marital home due to their nonpayment on the contract for deed and Dennis Hensen's intention to foreclose on the property. The court, however, reserved ruling on the final value of the marital home, the corresponding debt attached to the home, and a debt consolidation loan owed to Dennis Hensen for six months "to allow litigation, if any, to proceed on the contract for deed" and debt. The court awarded spousal support to Melanie Jones in the amount of $900 per month for 10 years, and ordered Melanie Jones to pay child support in the amount of $590 per month. The court entered judgment.

II

[¶4] In her cross-appeal, Melanie Jones argues the district court erred in awarding Benjamin Jones primary residential responsibility of their two children.

> A district court's award of primary residential responsibility is a finding of fact reviewed by this Court under the clearly erroneous standard of review. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if, after reviewing the entire record, we are left with a definite and firm conviction a mistake has been made. A court's choice for primary residential responsibility between two fit parents is a difficult one, and this Court will not retry the case or substitute its judgment for that of the district court when its decision is supported by the evidence. A court must award primary residential responsibility in light of the child's best interests, considering all the relevant best interest factors under N.D.C.C. § 14-09-06.2(1).

*Saastad v. Saastad*, 2019 ND 279, ¶ 6, 935 N.W.2d 776 (citations omitted).

[¶5]   The district court considered all of the best interest factors under N.D.C.C. § 14-09-06.2(1), finding factor (d) favored Melanie Jones, and factor (e) favored and factor (i) "strongly favor[ed]" Benjamin Jones. Factor (m) allows the court to consider other relevant factors. N.D.C.C. § 14-09-06.2(1)(m). The court found that factor (m) favored Benjamin Jones "in so far as E.J. expressed a clear preference for primary residential responsibility with Benjamin and M.J. and E.J. should stay together." (Emphasis omitted.) The court found the remaining factors favored neither party. Melanie Jones contends the court erred in finding factors (e) and (i) favored Benjamin Jones and in its ultimate residential responsibility finding.

A

[¶6]   Factor (e) considers the "willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child." N.D.C.C. § 14-09-06.2(1)(e). Melanie Jones argues the district court erred in finding this factor favored Benjamin Jones because he had improperly involved the children in the divorce. Specifically, Melanie Jones asserts Benjamin Jones asked M.J. to assist in serving her with divorce papers, informed E.J. that he wanted a divorce before the parties separated, encouraged E.J. to record a conversation with her, attended a counseling session with the children where she could not attend, told E.J. to agree with her on attending "therapy and talk[ing] to their priest" so that he could "buy some time" in discussing it with his attorney, and refused her request to have the children's phones track their locations.

[¶7]   The district court found the "service incident" where Benjamin Jones asked his younger daughter, M.J., to help a process server serve her mother was an "incredibly poor choice" by him, which "negatively impact[ed] the children's relationship with Melanie." The court found "[i]t was wholly inappropriate to involve the children" and was "concerned Benjamin involved the girls early on in order to have them on his side before the divorce was initiated."

[¶8]   The district court found Melanie Jones appeared to be "bitter and confrontational" while testifying and provided "acidic and accusatory"

3

testimony concerning Benjamin Jones taking their daughters to a Minnesota Timberwolves basketball game. In addition to the trial testimony, the court relied upon the parenting investigator's report, which consisted of information obtained through interviews of the parties and their two daughters and was admitted into evidence at the trial. Both Benjamin Jones and their older daughter, E.J., noted Melanie Jones's confrontational demeanor, which they described as "draining" and "very negative."

[¶9]   The district court stated its "primary concern" about Melanie Jones and "her ability to foster a relationship is the negative effect it has had on E.J. at school." The court found that Melanie Jones was discussing her divorce with other parents, which was either being done in the presence of those parents' children or the parents would later discuss the parties' divorce within earshot of their children. This gossip was then getting back to E.J., upsetting her. The court quoted from the parenting investigator's report, which stated:

> Both girls have lost friends throughout this process, they report at least some of this is the direct result of Melanie discussing her concerns about Benjamin with their friends' moms. M.J. expresses that some of her friends were not allowed to come visit her at her dad's house right away because their parents were concerned that her dad was crazy, like Melanie said. . . . M.J. has a few friends, who have divorced parents, who have been very supportive. She even has one who takes M.J.'s side when Melanie tells that friend's mom about Benjamin brainwashing them.

> E.J. reports more just losing friends as a result of this. When E.J. went to her friends for support, they tried to talk her out of how she was feeling, believing Melanie to be accurate in her recital of events. She tried to explain, but eventually gave up. E.J. is obviously hurt by this. . . . E.J. and M.J. both express that this story, of Benjamin behaving erratically and brainwashing them, being shared with community members has made it very hard for them to find support because everyone believes it to be true, so they try [to] talk them out of their preferences.

The court found, "Whether intentional or not, Melanie is alienating her daughters from their support systems, i.e. friends, church and community." The

court found Benjamin Jones, on the other hand, was not presently interfering with the children and Melanie Jones's relationship, and he admitted to his mistake of involving his daughters earlier on in the divorce.

[¶10] Melanie Jones argues her actions had no impact on this factor, or if they did, "it was—at worst—that things got a little awkward with [the children's] friends." She asserts the district court erred in holding these actions against her where "she confided in her friends about the divorce after which, through no fault or machinations of her own, her words apparently filtered through the small-town grapevine and got back to her children." The court's findings, supported by the parenting investigator's report and trial testimony, show that E.J. was hurt by her mother's gossip. While the court did not find Melanie Jones intended for her statements to get back to her children, it also did not find her faultless. Melanie Jones should have known that statements she made to other parents could have been passed along to her children. Further, the evidence showed the information that Melanie Jones was sharing was not limited to the divorce proceedings, but challenged Benjamin Jones's mental state and described his actions as "brainwashing." Melanie Jones's gossip undermines her argument that she is willing to facilitate and encourage a close and continuing relationship between the children and their father. We conclude the district court did not clearly err in finding factor (e) favored Benjamin Jones. The court's finding was not induced by an erroneous view of the law, evidence exists to support it, and we are not left with a definite and firm conviction a mistake has been made.

B

[¶11] Factor (i) of the best interest factors provides,

> If the court finds by clear and convincing evidence that a child is of sufficient maturity to make a sound judgment, the court may give substantial weight to the preference of the mature child. The court also shall give due consideration to other factors that may have affected the child's preference, including whether the child's preference was based on undesirable or improper influences.

N.D.C.C. § 14-09-06.2(1)(i).

5

[¶12] The district court found E.J., age fifteen at the time of trial, was of "sufficient age and maturity to make a sound judgment and her preference was not based upon undesirable or improper influence." The court found she preferred to primarily live with her father. When asked at trial about living with her mother on an equal weekly basis, E.J. agreed her relationship with her mother would go "downhill" because they "butt[ ] heads a lot." The court noted E.J. particularly dislikes the rumors that have been spread about the divorce and "the allegation she is being 'brainwashed,'" which the court found "causes her pain" and "is part of what is driving her decision." The court found that an equal living arrangement "could make matters worse between Melanie and E.J."

[¶13] Melanie Jones argues E.J. was influenced by her father through gifts, including a new phone, a television, clothes, a game system (PlayStation), a car, a golf cart, and Minnesota Timberwolves tickets. The district court found it was "likely some of these items would have been purchased regardless" because "some of the items the girls needed in the new home." While the court acknowledged the potential motive on Benjamin Jones's part, it ultimately found E.J. made her own independent decision based on Melanie Jones's conduct:

> While it is possible Benjamin "may" have attempted to win his daughters' affection and there is strong evidence to support the claim, this Court does not see that as an influence on E.J.'s decision. This Court believes what is motivating E.J.'s decision is Melanie's tone, perceived animosity and the effect it has had upon her being relayed to the children of Melanie's friends along with her (Melanie) over reaction to the divorce itself. Specifically, the discussions Melanie is having with her friends.

[¶14] There is evidence in the record supporting the district court's findings, and we are not left with a definite and firm conviction a mistake has been made. We conclude the court did not clearly err in finding factor (i) favored Benjamin Jones.

C

[¶15] Melanie Jones argues that because the district court clearly erred on finding factors (e) and (i) favored Benjamin Jones, it erred in awarding him primary residential responsibility. Because we have concluded the court did not

clearly err in its findings on factors (e) and (i), her argument is unpersuasive and we conclude the court did not clearly err in awarding Benjamin Jones primary residential responsibility of their children.

### III

[¶16] Benjamin Jones argues the district court erred in finding the marital home had zero equity. "This Court will not reverse a district court's findings on valuation of marital property unless they are clearly erroneous." *Lee v. Lee*, 2019 ND 142, ¶ 6, 927 N.W.2d 104.

### A

[¶17] As a preliminary matter, we must determine whether the marital home valuation is ripe for review. The district court reserved ruling on the final value of the marital home, the corresponding debt attached to the home, and a debt consolidation loan owed to Dennis Hensen for six months "to allow litigation, if any, to proceed on the contract for deed" and debt. "An issue is not ripe for review if it depends on future contingencies which, although they might occur, necessarily may not, thus making addressing the question premature." *Bies v. Obregon*, 1997 ND 18, ¶ 9, 558 N.W.2d 855. "The court does not, however, retain continuing jurisdiction to modify a final property distribution." *Kopp v. Kopp*, 2001 ND 41, ¶ 5, 622 N.W.2d 726. Once the court issued its final property distribution, it no longer had jurisdiction to modify that distribution absent a post-judgment motion by one of the parties. The court cannot reserve ruling on certain assets or debts beyond its final judgment. We conclude the court erred in reserving itself the ability to modify these final valuations. Because the court's valuations and property distribution became final upon entry of judgment, the marital home valuation is ripe for review.

### B

[¶18] Benjamin Jones argues the district court erred in adjusting the valuation date of the marital home from December 24, 2023 (60 days before trial) to February 14, 2024, which is the date of Dennis Hensen's notice of intent to cancel the contract for deed. Benjamin Jones contends that by relying on the notice to

conclude the equity in the home was zero, the court "effectively substituted a new valuation date without making the specific findings required by statute."

[¶19] Section 14-05-24(1), N.D.C.C., provides the valuation date:

> When a divorce is granted, the court shall make an equitable distribution of the property and debts of the parties. Except as may be required by federal law for specific property, the valuation date for marital property and debt is the date mutually agreed upon between the parties. If the parties do not mutually agree upon a valuation date, the valuation date for marital property and debt is sixty days before the initially scheduled trial date. If there is a substantial change in value of an asset or debt between the date of valuation and the date of trial, the court may adjust the valuation of that asset or debt as necessary to effect an equitable distribution and shall make specific findings that another date of valuation is fair and equitable.

[¶20] Neither party states they agreed upon a valuation date. On appeal, Benjamin Jones argues the valuation date on all property and debt was 60 days before trial, which was December 24, 2023. The parties' N.D.R.Ct. 8.3 property and debt listing states: "Valuation: December 10, 2023." In its findings of fact, conclusions of law, and order for judgment, the district court found the parties "submitted valuations on December 10, 2023." The court did not explicitly state that the parties agreed the valuation date was December 10, 2023, or that it was making a finding that the parties agreed to that date. It is therefore unclear as to whether December 10, 2023, was the valuation date agreed to by the parties or whether that was simply the date the parties originally submitted their 8.3 listing. We remand for the court to clarify whether the parties agreed to December 10, 2023, as the valuation date, or did not agree to a valuation date, making December 24, 2023, the valuation date.

[¶21] Notwithstanding this initial valuation date, the district court may adjust the valuation of an asset or debt "[i]f there is a substantial change in value" of the asset or debt "between the date of valuation and the date of trial" and "as necessary to effect an equitable distribution." N.D.C.C. § 14-05-24(1). The court,

8

however, must "make specific findings that another date of valuation is fair and equitable." *Id.*

[¶22] The district court found the marital home, including the surrounding acreage, is worth $497,320 (less $116,585 still owing on the property). The court assigned zero equity based on Dennis Hensen's February 14, 2024 notice of intent to cancel the contract for deed, determining that he intends on foreclosing on the property, leaving no equity to the parties.

[¶23] The district court did not specifically find there was a substantial change in value of the marital home and corresponding debt between the date of valuation and the date of trial. Nor did the court make specific findings that another valuation date for the marital home and corresponding debt was fair and equitable. We conclude the court erred by failing to make these specific findings while effectively choosing a valuation date other than the initial December 2023 date. We reverse the court's valuations as to the marital home and corresponding debt, and remand for the court to determine the valuation date for the marital home and debt. If that valuation date is different from the initial December 2023 valuation date, the court must explain the adjusted valuation date, including whether there was a substantial change in value of the marital home and corresponding debt between the date of valuation and the date of trial, and make specific findings that the adjusted valuation date is fair and equitable. If there are any changes in the court's valuations, the court must equitably redistribute the marital estate.

C

[¶24] In addition to reversing the marital home and debt reservations, we reverse the district court reserving ruling on the final value of a debt consolidation loan owed to Dennis Hensen. The court assigned this debt a value of $73,381, which is the value that both parties assigned to the debt. After assigning this value, the court divided the debt evenly between the parties. Neither party challenges this valuation or distribution on appeal. Other than attempting to reserve ruling on the "final value" of the debt, the court did not err in its valuation or distribution.

9

IV

[¶25] Benjamin Jones argues the district court erred in awarding Melanie Jones spousal support. "[S]pousal support and property distribution are interrelated and intertwined and must be considered together." *Berdahl v. Berdahl*, 2022 ND 136, ¶ 27, 977 N.W.2d 294. Because we reverse the valuations on the marital home and corresponding debt and remand with instructions to equitably redistribute the marital estate if there are changes in valuations, we remand the spousal support award, allowing the court to reconsider its award in light of any changes to the property distribution. *See id.*; *Senger v. Senger*, 2022 ND 229, ¶ 29, 983 N.W.2d 160; *Messmer v. Messmer*, 2020 ND 62, ¶ 21, 940 N.W.2d 622.

V

[¶26] Benjamin Jones argues the district court erred in calculating Melanie Jones's child support obligation by omitting her spousal support income and in-kind income for free rent and fuel. He contends Dennis Hensen is allowing her to live at the marital home rent-free and providing her free fuel from his farm fuel tank. Benjamin Jones also asserts the court erred by failing to impute income to Melanie Jones for her voluntary underemployment during the summer months while she is not teaching. "Child support determinations involve questions of law which are subject to the de novo standard of review, findings of fact which are subject to the clearly erroneous standard of review, and may, in some limited areas, be matters of discretion subject to the abuse of discretion standard of review." *Gooss v. Gooss*, 2020 ND 233, ¶ 14, 951 N.W.2d 247.

[¶27] "Section 75-02-04.1-01(4)(a), N.D. Admin. Code, defines gross income for child support purposes as 'income from any source, in any form,' except for some specific exclusions." *Knudson v. Knudson*, 2018 ND 199, ¶ 26, 916 N.W.2d 793. The child support guidelines provide examples of "gross income" including spousal support payments received, value of in-kind income received on a regular basis, and income imputed based upon earning capacity. N.D. Admin. Code § 75-02-04.1-01(4)(b). In-kind income means:

> the receipt from employment or income-producing activity of any valuable right, property or property interest, other than money or

10

money's worth, including forgiveness of debt (other than through bankruptcy), use of property, including living quarters at no charge or less than the customary charge, and the use of consumable property or services at no charge or less than the customary charge.

N.D. Admin. Code § 75-02-04.1-01(5). "An obligor is 'underemployed' if the obligor's gross income from earnings is significantly less than this state's statewide average earnings for persons with similar work history and occupational qualifications." N.D. Admin. Code § 75-02-04.1-07(1)(b).

[¶28] Melanie Jones argues Benjamin Jones failed to preserve his child support arguments for appeal because he did not make these arguments in the district court. She further asserts he did not provide evidence as to the value of the items he seeks to have included as income. "A party may not raise an issue or contention that was not previously raised or considered in the lower court for the first time on appeal." *Schiele v. Schiele*, 2015 ND 169, ¶ 16, 865 N.W.2d 433; *see also Wilson v. Wilson*, 2014 ND 199, ¶ 19, 855 N.W.2d 105 (concluding "district court did not err in failing to include the career service bonus in [father's] income for calculating his child support obligation" where mother did not raise issue before district court). Further, "there must be evidence of the value of the items a party seeks to have included as in-kind income before the trial court may include those items in calculating an obligor's gross income." *Schiff v. Schiff*, 2000 ND 113, ¶ 36, 611 N.W.2d 191.

[¶29] After Melanie Jones raised this lack of preservation argument in her appellee brief, Benjamin Jones failed to address it in his reply brief. Reviewing his post-trial brief and his post-trial reply brief, the only statement Benjamin Jones makes concerning child support is that he requests the court "order child support according to the guidelines." He did not submit a proposed child support calculation. We conclude that Benjamin Jones did not argue before the court that in-kind income should be included as a part of Melanie Jones's gross income or that income should be imputed for underemployment during the summer months.

[¶30] Benjamin Jones failed to provide values for these in-kind and imputed incomes and did not cite to the record showing values may be ascertained from

the evidence. In his appellant brief, Benjamin Jones states, "Melanie testified they previously made payments of $1,094.00 per month on the marital home's contract for deed. Interestingly, when it potentially benefitted her, Melanie claimed the payment on the marital home was $3,200 at the interim hearing. Melanie was often evasive and indirect on examination." (Citations omitted.) This is the only reference Benjamin Jones makes to a value with respect to his in-kind income argument. He does not contend this Court should recognize one of these values as in-kind rent, which should be added to Melanie Jones's gross income. To the extent he is asserting that, we again note, he did not state as much in either of his post-trial briefs or give the district court any indication that in-kind rent should be included in Melanie Jones's gross income for purposes of child support. We conclude the arguments fail for lack of evidentiary support.

[¶31] Spousal support is specifically included in the child support guidelines as an example of gross income. "If the district court fails to comply with the child support guidelines in determining an obligor's child support obligation, the court errs as a matter of law." *Gooss*, 2020 ND 233, ¶ 15. Benjamin Jones did not specifically argue before the district court that Melanie Jones's spousal support, to the extent it was awarded by the court, should be included in her gross income. We note, however, that he would not know whether the court was going to award her spousal support and, if it was awarded, the amount of spousal support. Benjamin Jones's argument on this issue would have therefore been hypothetical and limited, essentially arguing that to the extent spousal support is awarded that it be reflected in the gross income. The guidelines already require as much. We therefore conclude that because child support was at issue, no further argument was required by the parties as to the inclusion of spousal support payments. After awarding Melanie Jones spousal support, the court must include that amount in her gross income as required by the guidelines. *See Heinz v. Heinz*, 2001 ND 147, ¶ 18, 632 N.W.2d 443; *Corbett v. Corbett*, 2001 ND 113, ¶¶ 22, 32 n.4, 628 N.W.2d 312; *Mahoney v. Mahoney*, 1997 ND 149, ¶¶ 33-34, 567 N.W.2d 206. We reverse the child support award, concluding the court erred as a matter of law by failing to include spousal support. We remand for the court to recalculate Melanie Jones's child support obligation to include any spousal support.

[¶32] We have considered the parties' other arguments and conclude they are either unnecessary to our decision or without merit. We affirm the judgment in part, concluding the district court did not clearly err in awarding primary residential responsibility of the children to Benjamin Jones; and reverse in part, concluding the court erred in reserving ruling on the marital home and debt consolidation loan valuations, valuing the marital home and corresponding debt without making findings as to the valuation date, and calculating child support. We remand for the court to clarify the valuation date for the marital property and debt, make specific findings if another valuation date for the marital home is fair and equitable, redistribute the marital estate if any valuations change, reconsider spousal support in light of any redistribution of property, and recalculate child support to include any spousal support.

[¶33] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte
Douglas A. Bahr